TURNER, ADMR., APPELLEE, *v.* OHIO BELL TELEPHONE COMPANY, D.B.A. SBC OHIO, ET AL., APPELLANTS.

[Cite as *Turner v. Ohio Bell Tel. Co.,* 118 Ohio St.3d 215, 2008-Ohio-2010.]

(Nos. 2007–0035 and 2007–0112—Submitted November 27, 2007—Decided May 7, 2008.)

216

LANZINGER, J.

{¶ 1} This case presents us with the question of when a utility company may be liable when a driver hits one of its utility poles. The facts of this case are undisputed. In the early morning of September 10, 2003, Bryan Hittle and his passenger, Robert Turner, were on their way to work at Layton Excavating, Inc., driving south on State Route 188 in Pleasant Township, Ohio. Hittle had trouble seeing oncoming traffic and the center and edge lines of the road because of the darkness and fog. Due to the poor visibility, he followed the taillights of a truck immediately in front of him. While negotiating a curve, Hittle drove his car off the road, striking a utility pole and killing Turner. The utility pole was located in a grassy area two feet five inches from the berm and three feet nine inches from the white edge line of the road.[1] It was estimated that the speed of Hittle's Ford Mustang at impact was between 55 and 59 m.p.h. in a posted 45 m.p.h. zone. Hittle was convicted of vehicular manslaughter.

{¶ 2} Appellee, Lorri Turner, individually and as administrator of the estate of Robert Turner, instituted this action on February 22, 2005, against appellants, Ohio Bell Telephone Company, d.b.a. SBC Ohio, and South Central Power Company. The complaint alleged (1) that appellants "were negligent in placing, maintaining and continuing to utilize the utility pole in such close proximity to the traveled portion of State Route 188," (2) that "[t]he presence of the utility pole in such close proximity to the traveled portion of State Route 188 constituted a violation of Ohio Revised Code Section 4931.01 for which [appellants] are negligent per se," and (3) that "[t]he presence of the utility pole in such close proximity to the traveled portion of State Route 188 constituted an absolute and/or qualified nuisance." Appellants filed motions for summary judgment on all claims.

{¶ 3} In opposing the summary judgment motions, appellee produced affidavits from James B. Crawford, an accident reconstructionist, and Ronald W. Eck, a professor of civil and environmental engineering. Both opined that the utility pole at issue was located unreasonably close to the roadway, especially because it

---

1. Although there is evidence that the Ohio Department of Transportation issued a permit for installing the pole in 1977, whether appellant Ohio Bell Telephone Company or appellant South Central Power Company had responsibility for placement of the pole is in dispute but not at issue in this appeal.

would have been feasible to relocate the pole farther back from the improved portion of the roadway before the accident.

{¶ 4} The trial court granted the motions for summary judgment, stating that "the record demonstrates that the pole was neither placed on the traveled and improved portion of the road nor in such close proximity as to constitute an obstruction dangerous to anyone properly using the highway." It concluded that Turner could not demonstrate a breach of the duty of care. The court also ruled against appellee on the remaining nuisance claims.

{¶ 5} On appeal, the Eighth District reversed on the negligence and qualified nuisance claims, holding that a jury should decide the reasonableness of the pole placement based upon the facts of the case. The court of appeals stated that "liability may be imposed where the placement of a pole in close proximity to the edge of a roadway constitutes a foreseeable and unreasonable risk of harm to users of the roadway." *Turner v. Ohio Bell Tel. Co.*, 8th Dist. No. 87541, 2006-Ohio-6168, 2006 WL 3378474, at ¶ 17. The court, however, affirmed the entry of summary judgment for appellants on the claims of negligence per se and absolute nuisance.

{¶ 6} Upon motion by appellants, the Eighth District acknowledged that its decision was in conflict with other appellate cases, and we recognized the conflict. We also accepted appellants' discretionary appeal and consolidated the cases for review.

{¶ 7} Public utility companies have enjoyed at least a qualified right to place utility poles within the right-of-way of public roads since 1847. See 45 Ohio Laws 34 (permitting erection of telegraph poles and related fixtures along public roads and highways). This right was initially limited by a single condition: that the utility poles not incommode the public in the use of the roads or highways. Id. Today, before erecting poles or other fixtures on a public right-of-way, a utility company is generally required to obtain the approval of the public entity that owns the right-of-way. See R.C. 4939.03 (municipalities), 5547.04 (counties), and 5515.01 (the state). In the case of highways that are part of the state system, as in this case, approval may be granted only when the use "will not incommode the traveling public." R.C. 5515.01.

{¶ 8} The question in this case is when does a utility pole incommode the public in the use of the roads or highways? An early decision from this court involved a passenger who sued a utility company for injuries she sustained when the car she was riding in hit a rough spot in the berm, causing the vehicle to crash into a telephone pole located either on the berm or within 11 inches of it. *Cambridge Home Tel. Co. v. Harrington* (1933), 127 Ohio St. 1, 186 N.E. 611. This court declared in the syllabus as follows:

{¶ 9} "1. The traveling public has a right to the use of a public highway, to the entire width of the right of way, as against all other persons using such highway for private purposes.

{¶ 10} "2. Section 9170, General Code, provides as follows: 'A magnetic telegraph company may construct telegraph lines, from point to point, along and upon any public road by the erection of the necessary fixtures, including posts, piers and abutments necessary for the wires; but shall not incommode the public in the use thereof.' The last clause of that section constitutes a danger signal to public utilities using the highways for their own private purposes, to the effect that if they place 'posts, piers and abutments' within the right of way of the highway, they must not prejudice the superior rights of the traveling public by the location and maintenance of such posts, piers or abutments."

{¶ 11} Two years later, in *Ohio Bell Tel. Co. v. Lung* (1935), 129 Ohio St. 505, 2 O.O. 513, 196 N.E. 371, we held that "[w]here a guest is killed while riding in an automobile which collides with a telephone pole located in an improved portion of the highway 5.1 feet from the pavement, the questions whether the telephone company is guilty of negligence by placing the pole in the highway so as to incommode the traveling public, and whether such negligence is a proximate cause of such fatality are properly submitted to the jury for determination." Id. at paragraph one of the syllabus.

{¶ 12} Subsequently, a line of cases began to emerge involving collisions with utility poles located off the improved portion of the highway but within the right-of-way. In *Ohio Postal Tel.–Cable Co. v. Yant* (1940), 64 Ohio App. 189, 18 O.O. 57, 28 N.E.2d 646, a motorist negligently collided with a telegraph pole located 13 feet from the hard surface of the highway and 11 feet from the adjacent gravel strip. The *Yant* court determined that the pole did not incommode the public's use of the highway, noting that unlike in *Harrington*, the pole's location was "clearly without the roadway and not in close proximity to the improved portion." Id. at 192, 18 O.O. 57, 28 N.E.2d 646. The court commented that "[i]t is significant that the statute uses the word 'use.' To our notion, the traveling public has no superior right to misuse the highways." Id. It went on to say, "It seems crystal clear that the traveling public has no right to drive upon that portion of a public highway which is not dedicated, improved and made passable for vehicular use. To accord him pre-eminence is to deny the statutory right of occupancy given to public utilities, and to withhold from public authority the right to regulate public thoroughfares. We grant that emergencies may arise where such use is permissive. But we do not recognize any such unqualified superior right to a negligent traveler who abuses his privilege." Id. at 193, 18 O.O. 57, 28 N.E.2d 646.

{¶ 13} The First District Court of Appeals affirmed a directed verdict for a utility company because the light pole located 11 inches from the curb was not a hazard to anyone operating a motor vehicle on the paved portion of the road normally used for vehicular traffic. *Cincinnati Gas & Elec. Co. v. Bayer* (Nov. 3, 1975), 1st Dist. Nos. C–74627 and C–74628, 1975 WL 182100. In a more recent case, the First District determined that a utility company was entitled to judgment as a matter of law because "[e]vidence that a utility pole is adjacent to the travelled portion of a street does not, without more, create an inference that the street was unsafe or reflect any breach of duty." *Ferguson v. Cincinnati Gas & Elec. Co.* (1990), 69 Ohio App.3d 460, 463, 590 N.E.2d 1332. In this case, a bus rider who had her arm resting on the window frame with her elbow extending outside the window was injured when her elbow allegedly struck a utility pole. The court held that the utility company was not liable, because the pole, even though leaning into the street, did not extend past the curb into the traveled portion of the street, and the bus itself was able to safely pass the pole. Id. at 463, 590 N.E.2d 1332.

{¶ 14} Similarly, the Ninth Appellate District determined that a utility company does not breach a duty to the traveling public by placing a pole alongside a roadway but not on or immediately adjacent to the portion that is improved for travel. *Jocek v. GTE N., Inc.* (Sept. 27, 1995), 9th Dist. No. 17097, 1995 WL 569101.

{¶ 15} In the instant case, however, the Eighth District rejected the proposition that a utility company can never be liable when a driver strikes a utility pole outside the traveled and improved portion of the road. *Turner,* 2006-Ohio-6168, 2006 WL 3378474, at ¶ 16. It held that the relevant inquiry was not whether the utility pole was located *on* the traveled portion of the road but whether the pole was *in such close proximity to the edge* of a roadway to constitute a foreseeable and unreasonable risk of harm to travelers. Id. at ¶ 17. The appellate court developed an eight-factor test to determine the reasonableness of the pole location. Those factors include (1) the narrowness and general contours of the road, (2) the presence of sharp curves in the road, (3) the illumination of the pole, (4) any warning signs of the placement of the pole, (5) the presence or absence of reflective markers, (6) the proximity of the pole to the highway, (7) whether the utility company had notice of previous accidents at the location of the pole, and (8) the availability of less dangerous locations. Id. at ¶ 18.

{¶ 16} The Eighth District premised its holding in part on *Harrington*'s statement in the syllabus that the superior right of motorists must not be prejudiced by the placement of utility poles within the right-of-way. *Harrington,* 127 Ohio St. 1, 186 N.E. 611, paragraph two of the syllabus. This court has cautioned, however, that the syllabus of a decision must be read with reference to

the facts and issues presented therein. *Williamson Heater Co. v. Radich* (1934), 128 Ohio St. 124, 190 N.E. 403, paragraph one of the syllabus. The utility pole in *Harrington* was either on or immediately adjacent to (being less than a foot from) the improved part of the road. As the Fifth District noted: "The public as a general rule does not use or travel upon the entire limits of the right-of-way of a road but there is a certain portion of it prepared by public authorities to be used to travel over * * *." *Curry v. Ohio Power Co.* (Feb. 14, 1980), 5th Dist. No. CA–2671, 1980 WL 354093, at *7.

{¶ 17} Indeed, a motorist is not free to drive on the right-of-way as he or she pleases. R.C. 4511.33 provides:

{¶ 18} "(A) Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:

{¶ 19} "(1) A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."

{¶ 20} Nevertheless, utility companies do not enjoy unfettered discretion in the placement of their poles within the right-of-way, for they are required to obtain approval from the owner of the right-of-way. R.C. 4939.03, 5515.01, and 5547.04. The appropriate public authority presumably will consider many of the factors in the Eight District's reasonableness test when deciding whether to approve a pole location. In ruling against a vehicular passenger who sustained injuries when her right arm struck a roadside rural mailbox, we relied in large part on the fact that the placement of the mailbox substantially complied with the requirements of the Post Office Department. *Black v. Berea* (1941), 137 Ohio St. 611, 19 O.O. 427, 32 N.E.2d 1, paragraph one of the syllabus. Placement that complies with the requirements of the public authority that owns the right of way is indicative that the object is not an obstacle to the traveling public.

{¶ 21} Therefore, we hold that when a vehicle collides with a utility pole located off the improved portion of the roadway but within the right-of-way, a public utility is not liable, as a matter of law, if the utility has obtained any necessary permission to install the pole and the pole does not interfere with the usual and ordinary course of travel.

{¶ 22} This holding is consistent with the approach that we have taken regarding liability of political subdivisions and private landowners for injuries caused by objects within the right-of-way of the road. In *Strunk v. Dayton Power & Light Co.* (1983), 6 Ohio St.3d 429, 6 OBR 473, 453 N.E.2d 604, we addressed whether a municipality's duty to keep highways free from nuisance, as

required by R.C. 723.01,[2] extends to a driver who collided with a light pole off the traveled portion of the roadway. We determined that the light pole was not a nuisance, in that it was not a condition that would "render the highway unsafe for its usual and ordinary mode of travel." Id. at 431, 6 OBR 473, 453 N.E.2d 604. We therefore declined to extend a municipality's duty "past the portion of the highway considered the berm or shoulder." Id. Nine years later, we modified *Strunk* to the extent that it barred any liability for conditions within the right-of-way and held that "[a] permanent obstruction to visibility, within the highway right-of-way, which renders the regularly travelled portions of the highway unsafe for the usual and ordinary course of travel, can be a nuisance for which a political subdivision may be liable * * *." *Manufacturer's Natl. Bank of Detroit v. Erie Cty. Rd. Comm.* (1992), 63 Ohio St.3d 318, 322, 587 N.E.2d 819, and at paragraph one of syllabus. The focus in both *Strunk* and *Manufacturer's* is whether an object that is not on the improved portion of the road but within the right-of-way is a condition that makes the roadway unsafe for the *usual and ordinary course of travel.* Id. at 322, 587 N.E.2d 819.

{¶ 23} In *Ramby v. Ping* (Apr. 13, 1994), 2d Dist. No. 93–CA–52, 1994 WL 124829, the Second District Court of Appeals declined to extend *Manufacturer's* to impose a duty on adjacent landowners and municipalities to keep a right-of-way free of objects that pose a danger to vehicles that may foreseeably leave the traveled portion of the roadway. It noted, "No precedent exists for imposing a duty on public or private landowners to remove an off-road hazard that renders only off-road travel unsafe, unless the off-road travel is shown to be an aspect of the usual and ordinary course of travel on the roadway. Otherwise, every tree and solid fixed object on roadsides and road-shoulders would impose potential liability on public and private landowners for collisions occurring whenever a vehicle was driven off-road and into the object." Id. at *3. The Sixth and Tenth District Courts of Appeals have also noted that cases involving other types of off-the-road obstructions focus upon whether the obstruction affects safe travel on the regularly traveled highway. *Floering v. Roller,* 6th Dist. No. WD–02–076, 2003-Ohio-5679, 2003 WL 22417127, at ¶ 14; *Steele v. Ohio Dept. of Transp.,* 162 Ohio App.3d 30, 2005-Ohio-3276, 832 N.E.2d 764, at ¶ 11. We see no reason why utility poles located beyond the improved portion of the highway should be treated any differently.

---

2. The version of R.C. 723.01 in effect at the time stated: "Municipal corporations shall have special power to regulate the use of the streets. The legislative authority of such municipal corporation shall have the care, supervision, and control of public highways, [and] streets * * * within the municipal corporation, and shall cause them to be kept open, in repair, and free from nuisance." 1953 H.B. No. 1.

222

{¶ 24} In this case, there is no evidence that the utility pole, which was located in a grassy area two feet five inches from the berm and three feet nine inches from the white edge line of the road, interfered with the ordinarily and usually traversed portion of State Route 188. Had Hittle stayed within the marked lanes as required by R.C. 4511.33, or even on the improved portion of the roadway, his vehicle would not have come into contact with the utility pole.

{¶ 25} Although appellee argues that this case is similar to *Swaisgood v. Puder*, 6th Dist. No. E–06–033, 2007-Ohio-307, 2007 WL 196478, we find that it is distinguishable. In *Swaisgood*, a tractor-trailer, while making a right-hand turn, struck a Verizon utility pole located at the corner of the intersection, three feet nine inches from the paved portion of the road. There was evidence that the pole did not allow sufficient clearance for long vehicles, such as tractor-trailers, making a proper right-hand turn from the traveled portion of one highway to the traveled portion of the other. Due to the presence of a truck stop at the southeast corner of the intersection, the need for sufficient clearance for such vehicles should have been anticipated. Although it relied on the Eighth District's eight-factor test instead of the test we endorse today, the Sixth District's finding that there is a material issue of fact as to whether the Verizon pole interfered with the usual and ordinary course of travel is not inconsistent with the holding in this case. No such interference with normal turns has been demonstrated here.

{¶ 26} The evidence in this case indicates that the utility pole was erected pursuant to a permit issued by the Ohio Department of Transportation. Because the utility pole is located in the right-of-way but off the improved portion of the road and because a motorist properly using the usual and ordinary course of travel would not come into contact with the utility pole, we conclude that the utility pole did not incommode or interfere with the public's use of the highway, and therefore appellants are not liable as a matter of law.

{¶ 27} The judgment of the Cuyahoga County Court of Appeals is reversed on the claims of negligence and qualified nuisance and affirmed on the claims of absolute nuisance and negligence per se, and judgment is entered for appellants.

Judgment affirmed in part
and reversed in part.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, and CUPP, JJ., concur.

PFEIFER and O'DONNELL, JJ., dissent.

---

O'DONNELL, J., dissenting.

{¶ 28} I respectfully dissent. We accepted jurisdiction over this case to resolve two questions certified to us by the Cuyahoga County Court of Appeals. The

first is "[w]hether a utility pole that is located off the improved portion of the roadway, but in close proximity to the improved portion thereof and within the right-of-way, may constitute an obstruction dangerous to anyone properly using the highway." *Turner v. Ohio Bell Tel. Co.*, 113 Ohio St.3d 1439, 2007-Ohio-1266, 863 N.E.2d 656. The second is "whether a utility company may be held liable in negligence to motorists who strike a utility pole located in close proximity to the improved portion of a roadway and within the right-of-way when it presents a foreseeable and unreasonable risk of harm to users of the roadway." Id. Based on this court's precedent, I would answer these questions in the affirmative and accordingly affirm the judgment of the court of appeals in its entirety.

{¶ 29} R.C. 4931.03(A)(1) permits a telephone company to construct telephone lines "upon and along any of the public roads and highways." The statute, however, provides that the lines "shall be constructed so as not to incommode the public in the use of the roads or highways." Id.

{¶ 30} Today the majority holds that a utility company's placement of a telephone pole, regardless of its proximity to the improved portion of the roadway, cannot be a basis for liability if the utility obtained any necessary permission to place the pole in the particular location and the pole "does not interfere with the usual and ordinary course of travel." Majority opinion at syllabus. Thus, if the utility complied with the requisite statutory requirements, its placement does not, as a matter of law, "incommode the public in the use of the roads or highways." Id. In my view, this is an overbroad reading of our precedent and an infringement on the province of a jury.

{¶ 31} This court considered a similar issue in *Cambridge Home Tel. Co. v. Harrington* (1933), 127 Ohio St. 1, 186 N.E. 611. There, Harrington sustained injuries while riding in the passenger seat of a car when the car collided with a telephone pole. A jury found Cambridge Home liable for its placement of the pole. We noted that there was some dispute as to the exact location of the pole, i.e., whether the pole was located on the finished road or just to the side, but we held that, regardless of the pole's location, "[t]he traveling public has a right to the use of a public highway, *to the entire width of the right of way*, as against all other persons using such highway for private purposes." (Emphasis added.) Id. at paragraph one of the syllabus. In so holding, we reasoned that the statutory phrase "shall not incommode the public in the use thereof" "constitutes a danger signal to public utilities using the highways for their own private purposes * * *. [T]hey must not prejudice *the superior rights* of the traveling public by the location and maintenance of such posts, piers or abutments." (Emphasis added.) Id. at paragraph two of the syllabus. *Harrington* therefore establishes that the public has a right to use "the entire width of the right of way" and that this right is "superior" to any rights belonging to a utility company. Id. at paragraphs one

and two of the syllabus. None of the statutes regulating the procedure for placement of utility poles, whether R.C. 4939.03, 5547.04, or 5515.01, alters this rule.

{¶ 32} Two years later in *Ohio Bell Tel. Co. v. Lung* (1935), 129 Ohio St. 505, 2 O.O. 513, 196 N.E. 371, we affirmed a jury verdict in favor of a passenger who had been killed when his car hit a pole located in the berm. We stated, "Where a guest is killed while riding in an automobile which collides with a telephone pole located in an improved portion of the roadway * * *, the question[ ] whether the telephone company is guilty of negligence by placing the pole in the highway so as to incommode the traveling public * * * [is] properly submitted to the jury for determination." (Emphasis added.) Id. at paragraph one of the syllabus. In both *Harrington* and *Lung*, therefore, we permitted *the jury* to determine whether the placement of a utility pole "incommod[ed] the public in the use of the roads or highways," R.C. 4931.03(A)(2).

{¶ 33} The majority relies on several cases in support of its holding, including *Ohio Postal Tel.–Cable Co. v. Yant* (1940), 64 Ohio App. 189, 18 O.O. 57, 28 N.E.2d 646; however, *Yant* recognized a superior right belonging to drivers and stated that the right is qualified only by negligent travelers who "abus[e] [the] privilege." Id. at 193, 18 O.O. 57, 28 N.E.2d 646.

{¶ 34} *Yant* further illustrates my disagreement with the majority: its holding fails to mention either negligent travelers who abuse their driving privileges or the location of the pole in proximity to the road. I agree that "the traveling public has no superior right to misuse the highways," id. at 192, 18 O.O. 57, 28 N.E.2d 646, but not every car that leaves the roadway "misuses" it. Circumstances arise where drivers leave the roadway without necessarily abusing their superior right to the use of the right-of-way. The majority's position does not allow for these possibilities.

{¶ 35} Moreover, the majority makes no distinction between a pole located two feet five inches from the berm, as in this case, or one located 11 feet from the berm as in *Yant*. According to the majority, no utility company—even one that obtains permission to place a pole just to the side, as in *Harrington*—can be held liable if it has obtained any necessary permission to install the pole from the owner of the right-of-way and it does not interfere with the ordinary course of travel. Majority opinion at syllabus. This holding seems to contradict our decisions in *Harrington* and *Lung* by removing the question from jury consideration.

{¶ 36} Obtaining permission for pole placement from the proper authority is not the test established by the General Assembly to determine whether liability arises from pole placement. Rather, in accordance with R.C. 4931.03, the issue presented is whether the construction of the poles and the telephone lines

incommode the public in the use of the highway. The relevant factors for consideration, then, would include whether those using the roadway have been incommoded by the pole and whether they have misused the highway or are negligent travelers who have abused their driving privileges, as determined from the facts and circumstances surrounding the accident.

{¶ 37} In this instance, based on the placement of the pole, the evidence of prior accidents involving this pole, and the other attendant circumstances, including the speed of the vehicle, road conditions, and visibility, a jury issue is presented—whether or not the placement of the pole has incommoded the public in the use of the roads or highways. Accordingly, I would affirm the judgment of the court of appeals.

PFEIFER, J., concurs in the foregoing opinion.

———————————

John J. Spellacy; and Allan & Gallagher, L.L.P., and Sean P. Allan, for appellee.

Thompson Hine, L.L.P., William R. Case, Scott A. Campbell, and Jennifer E. Short, for appellant South Central Power Company.

Calfee, Halter & Griswold, L.L.P., Thomas I. Michals, and Anthony F. Stringer, for appellant Ohio Bell Telephone Company, d.b.a. SBC Ohio.

Ulmer & Berne, L.L.P., and Richik Sarkar, urging reversal for amici curiae Ohio Edison Company, Cleveland Electric Illuminating Company, Toledo Edison Company, and FirstEnergy Corp.

Thompson Hine, L.L.P., and Kurt P. Helfrich, urging reversal for amicus curiae Ohio Rural Electric Cooperatives, Inc.

Thompson Hine, L.L.P., Thomas E. Lodge, Andrew H. Cox, and William J. Hubbard, urging reversal for amicus curiae Verizon North, Inc.

Douglas E. Hart, urging reversal for amicus curiae Cincinnati Bell Telephone Company, L.L.C.

Joseph R. Stewart, urging reversal for amicus curiae United Telephone Company of Ohio, d.b.a. Embarq.

Bailey Cavalieri, L.L.C., and William A. Adams, urging reversal for amici curiae Windstream Ohio, Inc., and Windstream Western Reserve, Inc.

Thompson Hine, L.L.P., Thomas E. Lodge, and Carolyn Flahive, urging reversal for amicus curiae Ohio Telecom Association.