[Cite as *Bidar v. Cleveland Elec. Illum. Co.*, 2012-Ohio-3686.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 97490

---

# DAVID C. BIDAR, ET AL.

### PLAINTIFFS-APPELLANTS

vs.

# CLEVELAND ELECTRIC ILLUMINATING CO., ET AL.

### DEFENDANTS-APPELLEES

---

## JUDGMENT:
## REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-746015

**BEFORE:** Jones, P.J., Cooney, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** August 16, 2012

**ATTORNEY FOR APPELLANTS**

David I. Pomerantz
Pomerantz & Crosby Co., L.P.A.
24700 Chagrin Boulevard
Suite 309
Beachwood, Ohio 44122


**ATTORNEYS FOR APPELLEES**

John J. Eklund
Thomas I. Michals
Eric S. Zell
Calfee, Halter & Griswold LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114

LARRY A. JONES, SR., P.J.:

{¶1} Plaintiffs-appellants, David and Teresa Bidar, appeal the trial court's judgment granting summary judgment in favor of defendants-appellees, the Cleveland Electric Illuminating Company ("CEI") and First Energy Corporation ("First Energy"). We reverse and remand.

I.

{¶2} In May 2010, David Bidar ("Bidar") was involved in a motor vehicle accident. Bidar was driving on Savage Road in Bainbridge Township when a deer darted in the roadway. Bidar swerved to avoid hitting it and struck a CEI utility pole. CEI is an Ohio corporation that provides electricity.

{¶3} Bidar sued for his personal injuries and other damages as a result of the accident, and his wife, Teresa Bidar, sued for loss of consortium. CEI and First Energy filed separate motions for summary judgment, and the trial court granted both motions. Relative to CEI, the trial court found that it was granted permission to install the pole under R.C. 4931.03(A) and 4931.14. The trial court further found that the pole did not interfere with the usual and ordinary course of travel. Relative to First Energy, the trial court found that it is a "holding company and as such does not own, control, or maintain the property at issue in this matter."

{¶4} The Bidars now appeal, raising the following assignments of error:

[I.]   The Trial Court erred in holding that, as a matter of law, Appellee The Cleveland Electric Illuminating Company ("CEI") obtained the permission of the State of Ohio to maintain utility Pole #191924 in the clear zone of the right-of-way adjacent to Savage Road in Bainbridge Township, by virtue of R.C. 4931.03(A).

[II.] The Trial Court erred in granting immunity to Appellees, based on the case of *Turner v. Ohio Bell Telephone Co.*, 118 Ohio St.3d 215, 2008-Ohio-2010, 887 N.E.2d 1158, when Appellees never obtained the requisite permission of any governmental authority to maintain pole #191924 in the location where Appellant David C. Bidar struck it.

[III.] The Trial Court erred in granting summary judgment to Appellees CEI and FirstEnergy Corp., because genuine issues of material fact exist, and Appellees are not entitled to judgment as a matter of law.

II.

{¶5} Under Civ.R. 56(C), summary judgment may be granted only when there remains no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion. *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 629, 605 N.E.2d 936 (1992), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 375 N.E.2d 46 (1978).   A moving party cannot discharge its burden under Civ.R. 56 simply by making conclusory assertions that the nonmoving party has no evidence to prove its case.   *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 1996-Ohio-107, 662 N.E.2d 264.   Rather, the moving party must point to some evidence that affirmatively demonstrates that the nonmoving party has no evidence to support his or her claims.   *Id.*

{¶6} An appellate court's review of summary judgment is de novo.   *Koos v. Cent.*

*Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588, 641 N.E.2d 265 (8th Dist.1994). Thus, we conduct an independent review of the record and stand in the shoes of the trial court. *Jones v. Shelly Co.*, 106 Ohio App.3d 440, 445, 666 N.E.2d 316 (5th Dist.1995).

{¶7} As grounds for its summary judgment motion, CEI contended that the "undisputable facts and Ohio law" demonstrate that (1) CEI had all necessary permission to install the utility pole, (2) the pole did not interfere with the usual and ordinary course of travel on Savage Road, and (3) under the Ohio Supreme Court's decision in *Turner*, *supra*, CEI cannot be held liable to the Bidars.

{¶8} All of CEI's contentions are derived from *Turner*. In *Turner*, a driver and his passenger were on their way to work in low visibility conditions. While negotiating a curve, the driver drove his car off the road, striking an Ohio Bell pole. The passenger died as a result of injuries he sustained in the crash. The utility pole was located in a grassy area 2 feet 5 inches from the berm and 3 feet 9 inches from the white edge line of the road.

{¶9} The administrator of the passenger's estate sued Ohio Bell and South Central Power Company. Both companies filed motions for summary judgment, which the trial court granted. On appeal, this court held that a jury should decide the reasonableness of the placement of the pole based on the facts of the case. *Turner v. Ohio Bell Tel. Co.*, 8th Dist. No. 87541, 2006-Ohio-6168. The Ohio Supreme Court reversed this court's decision, finding that:

> [w]hen a vehicle collides with a utility pole located off the improved portion
> of the roadway but within the right-of-way, a public utility is not liable, as a

matter of law, if the utility has obtained any necessary permission to install the pole and the pole does not interfere with the usual and ordinary course of travel.

*Turner*, 118 Ohio St.3d 215, 2008-Ohio-2010, 887 N.E.2d 1158, at ¶ 21.

{¶10} The court reasoned that "utility companies do not enjoy unfettered discretion in the placement of their poles within the right-of-way, for they are required to obtain approval from the owner of the right-of-way." *Id.* at ¶ 20. The court further stated that "[p]lacement that complies with the requirements of the public authority that owns the right of way is indicative that the object is not an obstacle to the traveling public." *Id.* In *Turner*, the pole was placed pursuant to a permit issued by the Ohio Department of Transportation.

{¶11} Relying on *Turner*, CEI contends that the "any necessary permission" language in *Turner* means a utility company may install a pole without explicit permission if permission is conferred by statute; specifically, in this case R.C. 4931.03(A). We disagree. CEI confuses a public utility's *use* of a public right of way for its lines and facilities with its *placement* of its lines and facilities. Use and placement are differing concepts. Although a utility's use of a public right of way is presumed under Ohio law, placement of a utility's lines or facilities is not unfettered.

{¶12} Bainbridge Township is an unincorporated township and is governed by R.C. 4931.03. That section provides for CEI's use of a public right of way for its lines and facilities in relevant part as follows:

(A) A telephone company [1] may do either of the following in the unincorporated area of the township:

(1) Construct telecommunications lines or facilities upon and along any of the public roads and highways * * * by the erection of the necessary fixtures, including posts, piers, or abutments for sustaining the cords or wires of those lines or facilities.   The lines and facilities shall be constructed so as not to incommode the public in the use of the roads or highways * * *.

* * *

(B)(2) Construction under this section is subject to section 5571.16 of the Revised Code, as applicable, *and any other applicable law*, including, but not limited to, any law requiring approval of the legislative authority, the county engineer, or the director of transportation.

(Emphasis added.)

{¶13} The very language of the statute in subsection (B)(2) supports our conclusion that a utility's *placement* of its lines and facilities is not implied as a matter of law.   That is, a utility does not have "unfettered discretion in the *placement* of their poles within the right-of-way * * *."   (Emphasis added.)   *Turner*, 118 Ohio St.3d 215, 2008-Ohio-2010, 887 N.E.2d 1158, at ¶ 20.

{¶14} In *Turner*, this court stated that reasonableness of pole location should include consideration of (1) the narrowness and general contours of the road, (2) the presence of sharp curves in the road, (3) the illumination of the pole, (4) any warning signs

---

[1]R.C. 4933.14 expressly provides that this section also governs electric, light, and power companies.

of the placement of the pole, (5) the presence or absence of reflective markers, (6) the proximity of the pole to the highway, (7) whether the utility company had notice of previous accidents at the location of the pole, and (8) the availability of less dangerous locations. *Id.* at ¶ 18.

{¶15} In addressing the permission aspect of pole placement, the Ohio Supreme Court stated that making a determination of whether to grant a public utility permission to place a pole in a particular right of way place, the "appropriate public authority presumably will consider many of the factors in the Eight[h] District's reasonableness test * * *." *Turner* at ¶ 20.

{¶16} Thus, in *Turner* the Ohio Supreme Court has rationalized that the public authority that owns the right-of-way will have evaluated the risks in the process of granting or denying a public utility permission to place a pole in a particular right-of-way. Therefore, a jury determination of the reasonableness of pole placement is unnecessary if (1) permission was granted, and (2) the pole does not interfere with the usual and ordinary course of travel. These are two separate requirements, but "[p]lacement that complies with the requirements of the public authority that owns the right of way is indicative that the object is not an obstacle to the traveling public." *Id.*

{¶17} No permission was granted by any public authority in this case. If we were to find that permission was implied by statute, any assessment for the risk of the pole placement would be eliminated. We decline to so find and note that the risk of the pole placement was of central concern to the Geauga County Engineers Office.

{¶18} Specifically, the record reflects that CEI's Savage Road poles became an issue when the Bainbridge Township Board of Trustees approved a project to widen, straighten, and reconstruct Savage Road. The Geauga County Engineer served as the project manager. CEI was notified of the project and sent the plans. Originally, CEI had planned to relocate or remove all of its poles on Savage Road. However, after removing some of the poles, CEI abandoned its original plan.

{¶19} In support of its contention that it had statutory permission for the placement of its poles, CEI submitted (1) the police report showing that Bidar was cited for failure to maintain his vehicle, (2) the affidavit of the county engineer averring that Bainbridge Township is unincorporated, and (3) the affidavit of Arthur Stitt, a First Energy representative, averring that the pole at issue was 2 feet, 6 inches from the edge of the pavement of the road, 4 feet, 4.8 inches from the outside of the white edge line of the road, and 4 feet, 8.4 inches from the inside of the white edge line of the road.

{¶20} In opposition to CEI's motion for summary judgment, the Bidars submitted various documentation from the parties involved. For example, in a March 2009 letter sent from the county engineer to a First Energy representative concerning CEI's revised plans, the county engineer stated that the township kept Savage Road closed since the start of the project to "protect not only the driving public, but also their and your tort liability."

{¶21} The letter continued that the revised plans did not "address the clear zone of the roadway. In some cases the poles are in the ditch line and may not have enough cover, in other areas, poles are in front of the ditch and only four to six feet off the edge of

the pavement." The county engineer stated that the revised plans created a "liability the township will not allow to exist on a public road," as well as a "liability" the engineer thought First Energy would not want to absorb. The county engineer concluded the letter as follows:

> As Project Manager for the township road reconstruction project, I am requesting your review of this project with the hope you will agree that it is in the best interest of everyone that First Energy completes the [original] plan in a timely fashion and provide a safe, clear zone for the roadway.

**{¶22}** Further documentation submitted by the Bidars indicated, by a First Energy representative's own admission, that within the company the project "changed a number of hands over the last 2 years[, and there were] too many emails floating around and not enough clarity." Of the company's efforts, another First Energy representative stated the "left hand doesn't know what the right hand is doing."

**{¶23}** Nonetheless, the record reflects that First Energy was aware of the engineer's concerns. For example, in an internal memo, a representative stated that he believed the engineer's "concerns will only be resolved by relocating the poles in question consistent with clear-zone guidelines." And another internal First Energy memo recognized that there is a difference between the right to use and the location of the use, stating:

> By tradition and practice highway and utility facilities frequently coexist within a common, public right-of-way. Consent for utility use of public right-of-way is presumed in the Ohio Revised Code, however neither a compensable interest in the land nor franchise rights are conferred to utilities through their use of the public way. Ohio Revised Code also provides the means for the agencies having jurisdiction over a roadway to have utility facilities constituting obstructions or interference removed and the cost of removal assessed to the facility owner.

* * *

I believe there to be no disagreement over Company responsibility for utility relocations necessitated by improvements made to the public way for public benefit. * * *

[I]f utility facilities can be relocated to meet the clear-zone guidelines as one safety improvement in conjunction with other roadway improvements[,] that is the expectation.

{¶24} By statute, the "county engineer *shall supervise* the * * * construction, reconstruction, resurfacing, and improvement of public roads by boards of township trustees under * * * the Revised Code. * * *." (Emphasis added.) R.C. 5543.09(A). Further, R.C. 5571.05 provides that

[i]n the maintenance and repair of roads, the board of township trustees * * * shall be subject to the general supervision and direction of the county engineer. Such board of township trustees shall follow the direction of the engineer as to methods to be followed in making repairs.

{¶25} Under R.C. 5543.09(A) and 5571.05, the Savage Road project was subject to the supervision of the county engineer.[2] The Bidars presented evidence that the engineer did not find the placement of the pole acceptable and, therefore, did not grant permission for its placement. Even putting R.C. 5543.09(A) and 5571.05 aside, the Ohio Supreme

---

[2]R.C. 5543.09 and 5571.05 were not raised at the trial court level. We are mindful that generally an appellate court will not consider a legal theory not raised or considered by the parties in the lower court. *State ex rel. Zollner v. Indus. Comm.*, 66 Ohio St.3d 276, 278, 1993-Ohio-49, 611 N.E.2d 830. But an appellate court is afforded discretion to review on grounds not presented below if the evidentiary basis on which the appellate court relies was adduced in the trial court. *State v. Peagler*, 76 Ohio St.3d 496, 499, 1996-Ohio-73, 668 N.E.2d 489; *Cope v. Miami Valley Hosp.*, 195 Ohio App.3d 513, 2011-Ohio-4869, 960 N.E.2d 1034, ¶ 36 (2d Dist.). *See also Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42, 654 N.E.2d 1327 (9th Dist.1995).

Court in *Turner* specifically stated that utility companies are "required to obtain approval from the owner of the right-of-way." *Turner*, 118 Ohio St.3d 215, 2008-Ohio-2010, 887 N.E.2d 1158, ¶ 20. Further, the Bidars presented evidence that created a genuine issue of material fact as to whether the pole placement interfered with the usual and ordinary course of travel.

{¶26} Finally, the trial court granted First Energy's motion for summary judgment on the ground that it was a "holding company and as such does not own, control, or maintain the property at issue in this matter." The Bidars presented evidence that would, at least, cast doubt on that finding.

{¶27} In light of the above, the trial court's decision granting judgment to both CEI and First Energy is reversed and the case is remanded for further proceedings.

It is ordered that appellants recover of appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

LARRY A. JONES, SR., PRESIDING JUDGE

MARY EILEEN KILBANE, J., CONCURS;
COLLEEN CONWAY COONEY, J., DISSENTS

WITH SEPARATE OPINION

COLLEEN CONWAY COONEY, J., DISSENTING:

{¶28} I respectfully dissent. I would affirm the granting of summary judgment after addressing the Bidars' assignments of error as required by App.R. 12(A)(1)(b).

{¶29} In their first assignment of error, the Bidars argue the trial court erred in holding that CEI had permission from the state of Ohio to maintain the utility pole. In their second assignment of error, they claim the trial court erred in finding appellees had immunity under *Turner*. In the third assignment of error, they argue there were genuine issues of material fact that precluded the grant of summary judgment as a matter of law.

{¶30} In *Turner*, the Ohio Supreme Court held that when a vehicle collides with a utility pole located off the improved portion of the roadway but within the right-of-way, a public utility is not liable, as a matter of law, "if the utility has obtained any necessary permission to install the pole and the pole does not interfere with the usual and ordinary course of travel." *Id.* at syllabus. The *Turner* court explained that

> [t]oday, before erecting poles or other fixtures on a public right-of-way, a utility company is generally required to obtain the approval of the public entity that owns the right-of-way. See R.C. 4939.03 (municipalities), 5547.04 (counties), and 5515.01 (the state). *Id.* at ¶ 7.

{¶31} The Bidars contend that, under *Turner*, CEI was required to obtain a permit from the county engineer or the county commissioners to maintain the pole along Savage Road. In support of this argument, they note that the *Turner* court stated that "utility companies do not enjoy unfettered discretion in the placement of their poles within the

right-of-way, for they are required to obtain approval from the owner of the right-of-way." *Id.* at ¶ 20. However, *Turner* holds that utilities must obtain "any necessary permission" to install a pole. *Id.* at ¶ 21. In other words, the utility may install the pole without written permission if permission is conferred by statute.

{¶32} In this case, the pole was located in an unincorporated area of Bainbridge Township in Geauga County. R.C. 4931.03 governs construction in unincorporated areas of a township and provides, in pertinent part:

> (A) A telephone company may do either of the following in the unincorporated area of the township:
>
> (1) Construct telecommunications lines or facilities upon and along any of the public roads and highways and across any waters within that area by the erection of the necessary fixtures, including posts, piers, or abutments for sustaining the cords or wires of those lines or facilities. The lines and facilities shall be constructed so as not to incommode the public in the use of the roads or highways, or endanger or injuriously interrupt the navigation of the waters.

{¶33} Although R.C. 4931.03 specifically refers to telephone companies, R.C. 4933.14, which governs electric light and power companies, expressly states that R.C. 4931.03 applies "to a company organized for supplying public and private buildings, manufacturing establishments, streets, alleys, lanes, lands, squares, and public places with electric light and power." The permission expressly granted to telephone companies to erect poles upon and along any public road or highway applies to electric companies, who erect and maintain utility poles for the transmission of electrical power to customers by virtue of R.C. 4931.03 and 4933.14.

{¶34} Furthermore, *Turner* recognizes that the statutes prohibit utilities from

constructing or maintaining utility poles in such way that it would "incommode the public in the use of road or highways." Although R.C. 4931.03 and 4933.14 give utilities permission to install poles in a public right-of-way, the statutes do not confer "unfettered discretion" to install poles "wherever they please" as appellants suggest would be the case absent special permission from appropriate governmental entities.

{¶35} The Bidars do not provide any legal authority to demonstrate that CEI and First Energy were required to obtain permission from the Bainbridge Township Trustees, the Geauga County Commissioners, or the Geauga County Engineer. Rather they refer only to the Supreme Court's decision in *Turner* where the court explained that rather than require a jury to consider a list of factors to determine the reasonableness of the pole's location, it is safe to assume that "[t]he appropriate public authority" considered such factors when deciding whether to approve a pole's location. *Id*. at ¶ 20. Based on this language, they conclude that CEI and First Energy were required to obtain additional permission from "[t]he appropriate public authority."

{¶36} However, the *Turner* court further explained that "any necessary permission" from "[t]he appropriate public authority" depends on whether the pole is located on land owned by a municipality, a county, or the state. *Id.* at ¶ 7. As quoted above, the statute governing construction in unincorporated areas of land within a county does not require utility companies to file applications or obtain permits to install or maintain poles. In contrast, the statute governing public rights-of-way within a municipality expressly requires permission from the city before the public way may be used. R.C. 4939.03(C)(1)

states: "No person shall occupy or use a public way without first obtaining any requisite consent of the municipal corporation owning or controlling the property."

**{¶37}** Similarly, R.C. 5515.01, which governs the use of state highways, also expressly requires permission. It states:

> The director of transportation may upon formal application being made to the director, grant a permit to any individual, firm, or corporation to use or occupy such portion of a road or highway on the state highway system as will not incommode the traveling public.

R.C. 5515.01. The statute further lists a number of factors the director should consider before granting a permit to use State highway property. *Id.*

**{¶38}** Obviously, the legislature could have included language requiring utilities and others to obtain permission before using township roads or highways in unincorporated areas of the State, if it intended to impose an additional permission requirement. Because R.C. 4931.03 and 4933.14 do not require prior consent or approval before the installation of utility poles in unincorporated areas, permission is granted by statute and no additional permission is needed.

**{¶39}** The Bidars also argue that whether the pole's location incommoded the public's use of the road is a question of fact for a jury to decide. In support of this argument, they rely on *Ohio Bell Tel. Co. v. Lung*, 129 Ohio St. 505, 196 N.E. 371 (1935), in which the Ohio Supreme Court held that whether a telephone pole incommoded travelers on a road was a jury question. However, the Ohio Supreme Court implicitly overruled its holding in *Lung* when it reversed this court's decision in *Turner v. Ohio Bell Tel. Co.*, 8th Dist. No. 87541, 2006-Ohio-6168. Citing *Lung,* this court held that a jury

should decide the reasonableness of the pole's placement based upon the facts of the case. *Id.* at ¶ 21. As previously explained, the Ohio Supreme Court reversed our decision in *Turner* and held that utilities are not liable for any harm caused when a vehicle collides with a utility pole, if the utility has obtained any necessary permission to install the pole and the pole does not interfere with the usual and ordinary course of travel. *Turner*, 118 Ohio St.3d 215, 2008-Ohio-2101, 887 N.E.2d 1158, ¶ 21.

{¶40} Having concluded that CEI and First Energy were not required to obtain additional permission to install or maintain the pole in Bainbridge Township, the next issue is whether the pole interfered with the usual and ordinary course of travel. The pole was 2 feet, 6 inches (30 inches) from the edge of the Savage Road pavement and 4 feet, 4.8 inches (52.8 inches) from the outer edge of the road's edge line. It was located outside the roadway. The pole in *Turner* was closer to the road and was only 2 feet, 5 inches from the edge of the pavement and 3 feet, 9 inches from the edge line of the road. The *Turner* court held that the subject pole did not interfere with the "ordinarily and usually traversed portion" of the road because had the vehicle "stayed within the marked lines as required by R.C. 4511.33, or even on the improved portion of the roadway, his vehicle would not have come into contact with the utility pole." *Id.* at ¶ 24. Likewise, in the instant case, there is no evidence showing that the pole incommoded the ordinary flow of traffic on Savage Road. Therefore, I would find that CEI and First Energy were authorized by statute to maintain the pole at its location alongside Savage Road and that the pole did not incommode travel on the ordinarily traversed portion of the road.

**{¶41}** The Bidars also argue that CEI and First Energy are liable because they violated Ohio Department of Transportation ("ODOT") regulations that imposed a permission requirement on them. However, ODOT manuals are not laws and do not impose any mandatory requirements. *Jocek v. GTE North, Inc.*, 9th Dist. No. 17097, 1995 WL 56901 (Sept. 27, 1995), citing *Neiderbrach v. Dayton Power & Light Co.*, 94 Ohio App.3d 334, 343, 640 N.E.2d 891 (2d Dist. 1994). Thus, even if these guidelines applied to the Savage Road project, the Bidars cannot create liability for CEI or First Energy for their noncompliance with non-mandatory guidelines.

**{¶42}** Thus, because CEI had all necessary permission to install the pole and did not incommode the public travel on Savage Road, it is entitled to summary judgment as a matter of law. Therefore, I would affirm.