O’Neill, J.,
dissenting.
{¶ 42} Respectfully, I must dissent.
{¶ 43} The ultimate question in this matter is whether the defendant utility companies retained permission to leave eight utility poles in locations that had become dangerous due to the widening of a road. A duly empaneled jury found that one of the poles was involved in an accident that resulted in serious injuries.
{¶ 44} Defendants-appellants, the Cleveland Electric Illuminating Company (“CEI”) and FirstEnergy Service Company (“FirstEnergy”), argue that they are not liable as a matter of law because they had permission to place the pole in its existing location in 1952. They are correct, assuming that the permission was not rescinded.
{¶ 45} If the “necessary permission” to place the pole was granted and never rescinded, the majority explains, then defendants have established the first prong of the standard set forth in Turner v. Ohio Bell Tel. Co., 118 Ohio St.3d 215, 2008-Ohio-2010, 887 N.E.2d 1158. I can readily agree with that reasoning.
{¶ 46} But the record shows that the Bainbridge Township Board of Trustees had demanded that defendants move the eight poles in question. Defendants argue that affirmance of the court of appeals’ judgment in this case would require utility companies to survey “poles and other items that are in the areas surrounding the tens of thousands of miles of roadways in hundreds of Ohio’s unincorporated townships.” But this roadway had been widened — at the time of the accident, the poles were significantly closer to the edge of Savage Road than they had been when installed back in 1952. The existing locations of the eight poles created the hazard only in light of changed circumstances. And the board *296 sent defendants a letter rescinding permission to leave the poles in their existing locations after the widening of the road.
{¶ 47} Defendants were drawn into the Savage Road matter when in 2008, the Geauga County engineer sent CEI his Savage Road improvement plans with utility poles “in the construction area” highlighted. CEI responded with a form letter that had a box filled in, indicating that there were poles that would have to be moved. Shortly thereafter, CEI sent the county engineer a detailed schematic indicating that it would move approximately 87 poles along Savage Road. According to this plan, the pole involved in the accident at issue was to be moved nine feet further away from the road. In 2009, however, motivated by budgetary constraints, CEI ultimately determined that safety concerns did not, in fact, require relocation of 8 of the 37 poles, including the pole at issue in this case, and decided not to move them.
{¶ 48} Contrary to the majority’s assertion, the Bainbridge Township Board of Trustees did not fail to act thereafter. In May 2010, a car swerved to avoid a deer and hit one of the eight’ dangerously placed poles that CEI had decided not to relocate in 2009. Bidar v. Cleveland Elec. Illum. Co., 8th Dist. Cuyahoga No. 97490, 2012-Ohio-3686, 2012 WL 3526970. The next month, according to the minutes of its June 14, 2010 meeting, the board reached a “general agreement” that a letter asking CEI to move the eight poles should be drafted. Ten days later, on June 24, the chairman of the board sent CEI a letter stating, “We are concerned about the location” of the utility poles that CEI had chosen not to relocate. The letter requested that CEI submit a schedule for moving the eight poles on account of their dangerous placement. The letter further observed, “[I]t is apparent that safety dictates the relocation of these poles to an adequate distance from the roadway and in line with the other poles on Savage Road.” Upon receipt of that letter, CEI was on notice that its permission to leave the eight poles in place had been unequivocally rescinded. See Elster v. Springfield, 49 Ohio St. 82, 97, 30 N.E. 274 (1892) (“whatever grant may have been made by the town * * * could have no greater operation than as a temporary license, subject to be revoked at the will of the town or city, as its necessities in the future uses of the street might require”).
{¶ 49} At trial, the chairman of the board testified that the board intended this letter to “make [relocation of the poles] happen.” On September 10, 2010, CEI responded, offering in a letter to “draw up costs for [the township]” if it was interested in relocating the poles. Just a few weeks later, a deer ran plaintiff-appellee Douglas Link’s motorcycle off the road and into one of the eight poles that CEI had decided not to relocate.
{¶ 50} My disagreement with the majority opinion is based on the standard of review it employs and its determination that the board failed to act after CEI *297 decided not to move the poles. The jury has already entered a verdict in favor of the Links. Our role on appeal is limited by our standard for reviewing a judgment notwithstanding the verdict. Although we are to conduct a de novo review of the sufficiency of the evidence, the majority points out that we are also required to construe the evidence at trial most strongly in favor of the Links. Majority opinion at ¶ 22, citing Environmental Network Corp. v. Goodman Weiss Miller, L.L.P., 119 Ohio St.3d 209, 2008-Ohio-3833, 893 N.E.2d 173, ¶ 23. I dissent because I believe that the majority has taken the liberty of reevaluating the evidence contrary to the correct legal standard of review. We are not jurors, and the jurors apparently found that defendants had been placed on notice that (1) the poles were a hazard and (2) the board of trustees had rescinded permission for CEI to leave the eight poles in their hazardous locations.
{¶ 51} As explained above, the evidence was sufficient to allow the jury to reach these conclusions. The board chairman’s letter alone, properly construed in the light most favorable to the Links, allows a reasonable inference that the chairman requested a schedule for moving the eight dangerously placed poles in his official capacity on behalf of the board. The majority ignores the fact that the evidence flatly contradicts any assertion that defendants had ongoing permission to leave the poles where they were. They did not.
{¶ 52} The majority states that if the board of trustees had initiated more “formal” legal proceedings or taken official legal action to rescind whatever presumed lawful permission was granted in the 1950s, then defendants might not have established the first prong of Turner. Majority opinion at ¶ 7. The majority suggests that the board should have declared the eight poles a public nuisance and ordered their removal under R.C. 5571.14. Majority opinion at ¶ 32. I disagree. The chairman of the board explained at trial that the trustees serve part-time and do not always know what to do without direction from the county prosecutor or county engineer. The fact that the board of trustees did not follow the procedure outlined in R.C. 5571.14 suggests more strongly that it was not aware that that statute existed than that it consciously decided to allow CEI to leave the eight poles where they were.
{¶ 53} That the board of trustees applied a softer touch when working with a private entity cannot override the jury verdict against defendants. A declaration of public nuisance under R.C. 5571.14 is an undiplomatic final act of an aggrieved township. It is certainly not the only act sufficient to rescind permission to use the township’s roadway easement for placement of a utility pole. Instead, the board of trustees was empowered with “control of the township roads of [the] township.” R.C. 5571.02. “Control” must entail at least the discretion as to how to demand that a utility company move its pole to a safer location within a township’s easement.
*298 DeMarco & Triscaro, Ltd., and Joseph J. Triscaro, for appellees.
Calfee, Halter & Griswold, L.L.P., Thomas I. Michals, John J. Eklund, William E. Coughlin, and Eric S. Zell, for appellants.
Frost Brown Todd, L.L.C., Frank J. Reed Jr., and Alexander L. Ewing, urging affirmance for amici curiae the County Commissioners Association of Ohio and the Ohio Township Association.
Melissa R. Lipchak, urging affirmance for amicus curiae Ohio Association for Justice.
Edward L. Bettendorf, urging reversal for amicus curiae the Ohio Bell Telephone Company.
{¶ 54} Even assuming that the evidence that permission was rescinded is weak or conflicts with other facts in the record — a proposition I disagree with — that evidence is sufficient when construed most strongly in favor of the Links. For that reason, the jury’s verdict should stand. Properly understood, the majority opinion holds that the township could have more clearly rescinded permission by an official declaration of public nuisance instead of a letter sent pursuant to the “general agreement” of the board reflected in the minutes of its meeting. This court does not and should not throw out jury verdicts based on our own determination of what evidence would have been better proof. It is simply irrelevant whether a majority of this court would come to the same conclusion as the jury did. That is a question of the weight of the evidence, and answering that question was the role of the jury below.
{¶ 55} Respectfully, I dissent.
Pfeifer, J., concurs in the foregoing opinion.