[Cite as *Hardin v. Naughton*, 2013-Ohio-1549.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98645**

# KATHIE M. HARDIN

PLAINTIFF-APPELLANT

vs.

# MICHAEL NAUGHTON, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-735851

**BEFORE:** McCormack, J., Stewart, A.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** April 18, 2013

**ATTORNEYS FOR APPELLANT**

Sheryl H. Love
Robert P. Ducatman
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH 44114


**ATTORNEYS FOR APPELLEES**

Patrick F. Roche
Davis & Young
1200 Fifth Third Center
600 Superior Avenue, E.
Cleveland, OH 44114

Sean P. Allan
Allan & Gallagher, L.L.P.
1300 Rockefeller Bldg.
614 West Superior Avenue
Cleveland, OH 44113

TIM McCORMACK, J.:

{¶1}   Plaintiff-appellant, Kathie M. Hardin ("Hardin"), appeals the trial court's decision granting summary judgment in favor of defendants-appellees, Michael Naughton, Rusty Naughton, and 29704 Lake Road Ltd. ("Naughtons").   The trial court determined that the Naughtons were entitled to judgment as a matter of law on Hardin's claims of nuisance, Naughtons' alleged violation of Bay Village zoning ordinances, in part, conversion, and punitive damages.[1]   For the reasons that follow, we affirm.

## Substantive Facts and Procedural History

{¶2}   Kathie Hardin testified in her deposition that she purchased lakefront property on Lake Road in June 2007, in large part due to the exceptional city views over the lake.[2]   In September 2007, the Naughtons purchased the neighboring property to the east on Lake Road.   In the spring of 2008, the Hardins removed an existing backyard deck and designed a tiered stone patio to take its place.   Mr. Hardin testified that he advised the neighbors about the project, which necessitated the removal of certain

---

[1]   The trial court determined that summary judgment was appropriate as to Hardin's claim of a zoning violation with respect to the Naughtons' playground equipment.   The court, however, found that genuine issues of material fact remained with respect to the arborvitae.   The trial court granted the Naughtons' notice of voluntary dismissal of its counterclaim on May 15, 2012.   Thereafter, upon Hardin's unopposed motion, the court dismissed Hardin's remaining claims that were not dismissed by the court's granting of Naughtons' summary judgment motion.

[2]   Kathie Hardin is the titled owner of the lakefront property at issue in this appeal; however, she resides in the home with her husband, Charles Hardin.

arborvitae trees that were planted along the eastern side of the deck. According to Mr. Hardin, the Naughtons fully supported the patio plan.

{¶3} In August 2008, the Naughtons complained to the Hardins about the number and placement of pine trees being installed to replace the arborvitae. According to Mrs. Hardin's testimony, Mr. Hardin, the Naughtons, and Jim Schill, the landscaper, had a conversation concerning the pine trees. Mrs. Hardin testified that she listened to the conversation, yet she did not participate. Following this conversation, according to the Hardins' testimony, the Hardins agreed to install additional pine trees along the eastern side of their patio to address concerns the Naughtons had regarding their lack of privacy. The Naughtons claim that the issue with respect to the arborvitae had not been resolved and they objected to the use of pine trees rather than arborvitae. They further testified that they objected to the pines because they did not extend as far north as the former arborvitae.

{¶4} Approximately two years later, in the spring of 2010, the Naughtons began a landscaping project of their own, which involved installing playground equipment and a fence around the rear of their property. The Naughtons also wished to install new arborvitae to replace those that had been removed by the Hardins, as well as additional trees or shrubs. Prior to proceeding with this project, the Naughtons obtained written approval from the Bay Village Building Department to install certain trees or shrubs, side yard vegetation, a playground set, and two maple trees in the backyard. This written

approval was obtained through correspondence conducted between the Naughtons and Douglas L. Milburn, Bay Village's building director.

{¶5} The largest part of the Naughtons' backyard project was the installation of certain playground equipment. Mr. Hardin testified that the Naughtons advised the Hardins about the playground. Mr. Hardin, however, further testified that, not comprehending the size of the equipment, he raised no objection.

{¶6} Mr. Milburn confirmed that prior permission from the city was not required for the installation of playground equipment. The Naughtons elected to receive prior approval for this equipment nonetheless. While such approval was obtained for the "Super Sunshine Double Sunny," the actual playground installed was, according to Franklin David Williams, the playground equipment salesman, "a smaller version of the Supersized Monster Double Whammy." This playground includes two bi-level clubhouses, a bridge, a rock wall, a rope ladder, a slide, and a trapeze, among other items. Mr. Hardin testified that the playground destroyed their view of the city skyline from their outdoor patio and the first floor of their home, and he believed that this obstruction would negatively affect the resale value of the home. Mr. Hardin also testified that upon seeing the playground for the first time, he told Mr. Naughton, "I think you purchased the most expensive play structure in the history of the world."

{¶7} Upon Mr. Hardin's request, the mayor of Bay Village, Deborah Sutherland, visited the Hardins' home in order to view the property and the Naughtons' newly installed playground. While Mayor Sutherland testified in her deposition that she was

"appall[ed]" at the sight of the playground, she confirmed that the city had no authority to regulate the installation of the playground equipment.

{¶8} During the summer of 2010, the Naughtons asked the Hardins to remove the pine trees that had been planted along the eastern side of the Hardin's patio, claiming that the pines encroached on their property. The Hardins refused to remove the pines. Subsequently, Mr. Naughton removed certain sections of the trees that he contended encroached upon his property. The Naughtons, thereafter, completed the installation of their fence, playground equipment, and maple trees. The Hardins claimed that Mr. Naughton's removal of parts of the pine trees permanently damaged the trees and the Hardins were forced to remove them.

{¶9} On September 2, 2010, Kathie Hardin filed a complaint against the Naughtons for nuisance, violation of Bay Village zoning ordinances, and conversion. Hardin alleged that the Naughtons' installation of its backyard playground equipment and landscaping trees is a nuisance because it interferes with her view of the city skyline and her use and enjoyment of her land, thus resulting in a loss of value. Hardin also claimed that the installation of the playground and the trees is in violation of Bay Village's zoning ordinances. Finally, Hardin alleged that the Naughtons' removal of certain sections of her pine trees amounts to conversion. Thereafter, on October 26, 2010, the Naughtons filed an answer and counterclaim, alleging trespass.

{¶10} Following an unsuccessful settlement attempt, the Naughtons filed a motion for summary judgment on March 13, 2012, pursuant to Civ.R. 56, contending that Hardin

has not properly pleaded a claim for qualified nuisance, and she failed as a matter of law to establish absolute nuisance. The Naughtons further contended that their playground equipment and trees did not violate Bay Village's zoning ordinances. Finally, the Naughtons alleged that Hardin's claim for conversion fails as a matter of law in that conversion can only be asserted with respect to personal property, and the law does not recognize a conversion claim for the cutting of trees.

{¶11} On May 7, 2012, the trial court granted the Naughtons' motion for summary judgment, in part. The court determined that the Naughtons' alleged conduct and the type of harm Hardin alleged is not recognized under Ohio law as giving rise to an actionable claim for private nuisance, and as such, Hardin's claim for private nuisance fails as a matter of law. The trial court also concluded that a plain reading of the city's zoning ordinance dictates that a playground cannot be considered a "fence" within the terms outlined in the ordinance. Moreover, the court found the evidence demonstrated that the city had approved the Naughtons' playground equipment.

{¶12} The trial court, however, concluded that there were genuine issues of material fact as to whether the arborvitae is in compliance with section 1163(g) of the city's zoning ordinance. Specifically, it concluded that there were issues concerning the height of the trees and their location in proximity to "the main building." The court, therefore, denied the Naughtons' motion for summary judgment with respect to the planting of the arborvitae.

**{¶13}** Finally, the trial court determined that Hardin's claim of conversion fails as a matter of law in that Ohio law does not recognize such a claim for the cutting of trees. Moreover, the court held that Hardin cannot assert a claim of trespass in her brief in opposition for the first time, without requesting leave of court to file an amended complaint.

**{¶14}** On May 14, 2012, the Naughtons voluntarily dismissed their counterclaim. Subsequently, Hardin filed a motion to dismiss her remaining claims, with prejudice, which was granted by the trial court. This appeal followed.[3]

## Assignment of Error

The trial court erred in granting defendants' motion for summary judgment.

## Standard of Review

**{¶15}** Summary judgment is appropriate where it appears that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978); Civ.R. 56(C).

---

[3] Hardin does not address her claim of conversion in her brief filed with this court, nor does she assign error with respect to the alleged conversion. We will, therefore, not address this claim.

**{¶16}** The burden is on the movant to show that no genuine issue of material fact exists. *Id.* Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient; the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc., which affirmatively demonstrate that the nonmovant has no evidence to support his claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 1996-Ohio-107, 662 N.E.2d 264; Civ.R. 56(C). Unless the nonmovant then sets forth specific facts showing there is a genuine issue of material fact for trial, summary judgment will be granted to the movant.

**{¶17}** An appellate court reviews a trial court's grant of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241. Accordingly, appellate courts must independently review the record to determine if summary judgment was appropriate. In other words, appellate courts need not defer to trial court decisions on summary judgment. *See Brown v. Scioto Cty. Bd. Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

## I. Nuisance

**{¶18}** In Ohio, nuisance is defined as the wrongful invasion of a legal right or interest. *Taylor v. Cincinnati*, 143 Ohio St. 426, 436, 55 N.E.2d 724 (1944). A "nuisance" is categorized as either public or private. *Brown* at 712. A "public nuisance" is "an unreasonable interference with a right common to the general public." *Id.* A "private nuisance," however, is a "nontrespassory invasion of another's interest in the private use and enjoyment of land." *Id.*

{¶19} A public or private nuisance may be further classified as either an "absolute" nuisance, or nuisance per se, or a "qualified" nuisance. *Taylor* at paragraphs two and three of the syllabus. An absolute nuisance involves a wrongful act that is either intentional or unlawful. *Kratochvil v. Mayfield Bd. of Edn.*, 8th Dist. No. 81790, 2003-Ohio-1360, ¶ 32. The wrongful act at issue "is so inherently dangerous that it cannot be conducted without damaging someone else's property rights, no matter the care utilized, and strict liability attaches notwithstanding the absence of fault * * *." *Temple v. Fence One, Inc.*, 8th Dist. No. 85703, 2005-Ohio-6628, ¶ 41, quoting *Taylor* at paragraph two of the syllabus. In other words, "no matter how careful one is, such activities are inherently injurious and cannot be conducted without [causing damage]." *Ogle v. Ohio Power Co.*, 4th Dist. No. 11CA27, 2012-Ohio-4986, ¶ 10, quoting *Brown* at 713. The damage, or injury, must be "real, material, and substantial." *Banford v. Aldrich Chem. Co., Inc.*, 126 Ohio St.3d 210, 2010-Ohio-2470, 932 N.E.2d 313, ¶ 17.

{¶20} A qualified nuisance, however, concerns a lawful act "so negligently or carelessly done as to create a potential and unreasonable risk of harm, which in due course results in injury to another." *Temple* at ¶ 41, quoting *Taylor* at paragraph three of the syllabus. In essence, an action for qualified nuisance is an action for the negligent maintenance of a condition that creates an unreasonable risk of harm that results in injury. *Kratochvil* at ¶ 32; *Allen Freight Lines, Inc. v. Consol. Rail Corp.*, 64 Ohio St.3d 274, 275, 595 N.E.2d 855 (1992). Because the nuisance claim relies upon a finding of

negligence, the allegations of nuisance and negligence merge. *Allen* at 276, citing *Taylor* at 441.

## A. Qualified Nuisance

{¶21} In this case, Hardin cannot establish a qualified nuisance as a matter of law. Hardin's complaint alleges that she has a "legal interest in enjoying [her] property that includes an unobstructed view of Lake Erie and the downtown Cleveland skyline."[4] She further alleges that the Naughtons "maliciously, deliberately, and intentionally" interfered with her "legally protected interest," and as a result of the Naughtons' conduct, her property "has lost value."

{¶22} As outlined above, Ohio law dictates that a cause of action in qualified nuisance is essentially an action in negligence. *See Allen* at 275-276. Therefore, in order for Hardin to properly maintain a qualified nuisance claim, she must allege negligence: she must show that the Naughtons breached an applicable duty of care and the breach proximately caused her injuries. *Davis v. Widman*, 184 Ohio App.3d 705, 2009-Ohio-5430, 922 N.E.2d 272, ¶ 23 (3d Dist.), citing *Safeco Ins. Co. of Am. v. White*, 122 Ohio St.3d 562, 2009-Ohio-3718, 913 N.E.2d 426, ¶ 36.

{¶23} Hardin's complaint, however, failed to set forth facts constituting negligence. While Hardin does claim that the Naughtons' interference with her view of the city skyline caused her property value to decrease, she failed to allege that the

---

[4] While the complaint refers to "Plaintiffs" in all of the counts contained therein, we note here that the only plaintiff of record is Kathie Hardin.

Naughtons have a duty to not interfere with her enjoyment of such view and that the Naughtons breached that duty. Moreover, Hardin failed to claim that the Naughtons' actions in obstructing her view were "unreasonable," which is the applicable standard of care in a qualified nuisance or negligence claim. *Taylor*, 143 Ohio St. 426, 55 N.E.2d 724. Rather, Hardin alleged that the Naughtons' behavior was "malicious, deliberate, and intentional."

{¶24} Under these facts, and considering the complaint as alleged, we cannot find that the Naughtons' actions amounted to a qualified nuisance.

### B. Absolute Nuisance

{¶25} Hardin alleges that the Naughtons' installation of the playground equipment obstructs her view of the city skyline from her lakefront property. She further alleges that this obstruction decreases the value of her property and interferes with her use and enjoyment of her property. Hardin claims that such "harm" can provide a basis for a private nuisance cause of action. For the reasons that follow, we agree with the trial court and find no genuine issues of material fact with respect to Hardin's absolute nuisance claim.

{¶26} The Naughtons' conduct, however appalling or offensive it may have been to the Hardins, does not rise to an absolute nuisance. Nor is the injury or damage alleged by Hardin recognized under Ohio law as actionable private nuisance.

{¶27} The installation of the playground was neither unlawful or so inherently dangerous that it could not be installed without damaging someone else's property rights.

It does not interfere with a legal and cognizable property interest of Hardin's. The Naughtons obtained, through correspondence, prior approval from the city to build their playground, and according to Mayor Sutherland's testimony, the play structure does not violate any city ordinances. Moreover, the city's building director testified that the structure itself is not regulated by any city ordinance. Furthermore, Ohio law does not recognize a cause of action in private nuisance for the obstruction of a view across neighboring property.

{¶28} In support of her position, Hardin cites to *O'Neil v. Atwell*, 73 Ohio App.3d 631, 598 N.E.2d 110 (11th Dist.1991), for the proposition that a diminished view can present a private nuisance. In *O'Neil*, however, the court's focus was on the placement of the party's deck and whether it infringed on the neighbor's privacy. Furthermore, the *O'Neil* court applied a very broad definition of private nuisance in determining that the neighboring deck was a nuisance:

> "generally anything that by its continuous use or existence works annoyance, harm, inconvenience or damage to another landowner in the enjoyment of his property. Activity which results in an unreasonable interference with the use and enjoyment of another's property. A nuisance affecting a single individual or definite small number of persons in enjoyment of private rights not common to the public."

*Id*. at 635, quoting *Black's Law Dictionary* (5th Ed.1983) at 624.

{¶29} We agree with the trial court in this case, however, and find that the definition of private nuisance as defined by the Ohio Supreme Court in *Taylor* and its progeny is the more appropriate definition:

Absolute nuisance, for which strict liability or liability without fault is imposed by law, may be defined as a distinct civil wrong arising or resulting from the invasion of a legally protected interest, and consisting of an unreasonable interference with the use and enjoyment of the property of another; the doing of anything or the permitting of anything under one's control or direction to be done without just cause or excuse, the necessary consequence of which interferes with or annoys another in the enjoyment of his legal rights; the unlawfully doing of anything or the permitting of anything under one's control or direction to be done, which results in injury to another * * *.

*Taylor*, 143 Ohio St. 426, 55 N.E.2d 724, at paragraph two of the syllabus; *see also Stewart v. Seedorff*, 10th Dist. No. 98AP-1049, 1999 LEXIS 2375 (May 27, 1999), * 19-20. Two years after *Taylor*, the Supreme Court reiterated its earlier findings:

An absolute nuisance, or nuisance per se, consists of either a culpable and intentional act resulting in harm, or an act involving culpable and unlawful conduct causing unintentional harm, or a nonculpable act resulting in accidental harm, for which, because of the hazards involved, absolute liability attaches notwithstanding the absence of fault.

*Metzger v. The Pennsylvania, Ohio & Detroit RR. Co.*, 146 Ohio St. 406, 66 N.E.2d 203 (1946), paragraph one of the syllabus.

**{¶30}** There is no evidence in this case that the act of installing a substantial playground, such as the smaller Supersized Monster Double Whammy, involves an unlawful act or a hazard sufficient to invoke an absolute nuisance. Rather, Hardin established that she is inconvenienced and annoyed by the structure because it obstructs her view of the city skyline from across her neighbors' yard. Hardin failed to show, however, that she is legally entitled to an unobstructed view across her neighbor's property. Therefore, Hardin failed to establish that any legally protected right has been invaded.

**{¶31}** Finally, we agree with the trial court in finding that the type of harm generally recognized by the courts is different from that of which Hardin complains. The damage, or injury, must be "real, material, and substantial." *Banford*, 126 Ohio St.3d 210, 2010-Ohio-2470, 932 N.E.2d 313, ¶ 17. The question "is not simply whether the neighbor is annoyed or disturbed, but is whether there is an injury to a legal right of the neighbor." *Antonik v. Chamberlain*, 81 Ohio App. 465, 476, 78 N.E.2d 752 (9th Dist.1947). As we discussed above, Hardin's diminished view of the city skyline through the Naughtons' property is not legally protected, and therefore, it is not an actionable nuisance.

**{¶32}** Accordingly, we find no genuine issues of material fact exist as to Hardin's claim for absolute private nuisance.

## II. Bay Village Zoning Ordinance

**{¶33}** Hardin alleges that the Naughtons' playground equipment violates the city's zoning ordinances.[5]  Hardin contends that the Naughtons' playground can be considered a "fence," as the ordinances were intended to cover more types of structures than what is typically considered a "fence."  Because the playground equipment exceeds the guidelines outlined in Sections 1163.03 and 1163.05 of Bay Village's Codified Ordinances, Hardin argues, the equipment violates such ordinances.  We find Hardin's argument unpersuasive.

**{¶34}** The Codified Ordinances of Bay Village, as it applies to planning and zoning, provides as follows:

1163.03   DEFINITION.

* * *

(b)   As used in Section 1163.05(g), Lakefront Yard, "fence" means any enclosing structure, permanent or planted, including walls, windbreaks, privacy screens, sight barriers, dog runs, hedges, shrubs or vines planted so as to constitute a fence.   Retaining walls are specifically excluded from this definition.

* * *

1163.05   FENCE REGULATIONS.

* * *

(g)   Lakefront Yard.  Fences on a lakefront lot that are within the rear yard or the side yard which is adjacent to Lake Erie, lakefront yard, shall not exceed four feet, four inches in height confined to a distance not greater than twenty feet toward the lake from the main building.  Only protective barriers which are not to exceed four feet, four inches in height with a minimum of seventy-five percent open area are permitted elsewhere within

---

[5]   Hardin voluntarily dismissed her claim that the arborvitae planted by the Naughtons violated the zoning ordinance.

the lakefront yard. Fence posts shall not exceed four feet, six inches in height.

Bay Village Codified Ordinances 1163.03 and 1163.05.

{¶35} Courts must construe zoning ordinances in favor of the property owner, as zoning laws "are in derogation of the common law and deprive a property owner of certain uses of land to which he would otherwise be lawfully entitled." *Terry v. Sperry*, 130 Ohio St.3d 125, 2011-Ohio-3364, 956 N.E.2d 276, ¶ 19. We, therefore, construe Bay Village's ordinance governing fences on lakefront yards in favor of the Naughtons.

{¶36} In so doing, we find that a plain reading of the ordinance provides that a "fence" is an "enclosing structure" that is "permanent or planted." A playground is neither an "enclosing structure" or a "permanent" structure. Moreover, Mr. Milburn, the city's building director, approved the installation of the Naughtons' playground. Mr. Milburn determined that because the structure was considered "temporary playground equipment," a permit was not required for installation. Mayor Sutherland's testimony confirmed that the Naughtons' playground did not violate the city's zoning ordinances.

{¶37} In light of the above, this court agrees with the trial court and finds that there are no genuine issues of material fact concerning whether the Naughtons' playground equipment is a "fence" as defined by the city's zoning ordinances. The Naughtons, therefore, are entitled to summary judgment on this claim.

{¶38} In accordance with this order, Hardin's assignment of error with respect to the trial court's granting of summary judgment in favor of the Naughtons on Hardin's nuisance and zoning violations claims is overruled.

**{¶39}** Judgment affirmed.

It is ordered that appellees recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
TIM McCORMACK, JUDGE

MELODY J. STEWART, A.J., and
MARY J. BOYLE, J., CONCUR