[Cite as *Link v. FirstEnergy Corp.*, 2014-Ohio-5432.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101286**

**DOUGLAS LINK, ET AL.**

PLAINTIFFS-APPELLEES/
CROSS-APPELLANTS

vs.

**FIRSTENERGY CORP., ET AL.**

DEFENDANTS-APPELLANTS
CROSS-APPELLEES

**JUDGMENT:**
AFFIRMED IN PART, REVERSED AND
REMANDED IN PART

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-10-743317

**BEFORE:** Rocco, P.J., E.A. Gallagher, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** December 11, 2014

**ATTORNEYS FOR APPELLANT**S

Thomas I. Michals
William E. Coughlin
John J. Eklund
Eric S. Zell
Calfee, Halter & Griswold, L.L.P.
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio   44114

**ATTORNEYS FOR APPELLEE**

Joseph J. Triscaro
Demarco & Triscaro, Ltd.
30505 Bainbridge Road
Suite 110
Solon, Ohio   44139

Robert P. Demarco
Demarco & Triscaro, Lt.
30505 Bainbridge Road
Suite 225
Solon, Ohio   44139

KENNETH A. ROCCO, P.J.:

**{¶1}** In this appeal following a jury trial, defendants-appellants/cross-appellees Cleveland Electric Illuminating Company ("CEI") and FirstEnergy Service Company ("FESC") (collectively "the Defendants") appeal from the trial court's final order granting a judgment in favor of plaintiffs-appellees/cross-appellants Douglas Link and Diane Link (collectively "the Links"). The Links also filed a cross-appeal. For the reasons that follow, we affirm in part and reverse and remand in part the trial court's final judgment.

**{¶2}** Although many of the relevant facts appear in the analysis section where applicable, we begin with a brief background of the factual and procedural history of this case. CEI owned and operated utility poles along Savage Road in Bainbridge Township. FESC is a shared service company that supports CEI by providing services such as external affairs, economic development, accounting, and legal support. As part of this relationship, FESC makes suggestions and recommendations to CEI on a variety of matters.

**{¶3}** On May 8, 2006, the Bainbridge Township Board of Trustees passed a resolution to improve and widen the entire length of Savage Road in Bainbridge Township. In late 2006, the Geauga County Engineer's Office sent the Defendants the preliminary road reconstruction plans for the Savage Road widening project. On October 30, 2008, the Defendants transmitted their original utility pole relocation plans for Savage Road to the Geauga County Engineer's Office.

**{¶4}** Prior to the winter of 2008-2009, CEI relocated certain utility poles; however, it did not relocate approximately eight utility poles along the west side of Savage Road. The original plans called for the relocation of these poles. Savage Road remained closed for the winter of 2008-2009 because the utility pole relocation project was not completed, and the Defendants had made assurances that the relocation project would be finished in the first quarter of 2009 pursuant to the original plans.

{¶5} The Defendants failed to return to the project, and on March 2, 2009, the Defendants sent the Geauga County Engineer revised plans, which called for the poles that had not been relocated to remain in their current positions. On March 26, 2009, the Geauga County Engineer's Office sent the Defendants a letter concerning the Defendants' revised plans, specifically the plan not to relocate the poles. The Defendants, however, never moved the poles and the road was eventually reopened.

{¶6} On October 8, 2010, at around 10:00 p.m., Douglas Link was traveling on Savage Road in Bainbridge Township on his motorcycle. A white tail buck struck him under his left arm causing him to veer towards the right side of the road. Mr. Link struck a utility pole ("the Pole") owned by CEI causing serious and permanent injury to his right leg and pelvis.

{¶7} The Links filed a complaint in the trial court against CEI and FirstEnergy Corporation on December 10, 2010, asserting claims for, inter alia, negligence, qualified nuisance, loss of consortium, and punitive damages. On May 11, 2011, following discovery, the Defendants filed motions for summary judgment. The trial court denied the motions on October 7, 2011. The Defendants filed motions for reconsideration that the trial court also denied.

{¶8} On June 15, 2011, the Links sought leave to amend their complaint based upon newly discovered evidence that FESC was also culpable. The trial court granted the Links' request on April 12, 2012. FESC, CEI, and First EnergyCorporation filed motions for summary judgment on September 14, 2012, which the trial court denied.

{¶9} The case proceeded to trial on January 23, 2013. At the close of the Links' case, the Defendants moved for directed verdicts. The trial court did direct a verdict as to FirstEnergy Corporation, because the trial court concluded that it was merely a holding company.

The trial court also directed verdicts on a number of claims not relevant to the instant appeal. The trial court reserved ruling on the Links' punitive damages claim, and denied the motion for directed verdict with respect to the Links' claims against the Defendants for negligence and qualified nuisance. The Defendants renewed their motions for directed verdicts at the close of their case. The trial court granted the Defendants' motion for a directed verdict concerning the Links' claim for punitive damages, but denied the other motions.

{¶10} On February 5, 2013, the jury returned a verdict in favor of the Links on their claims for qualified nuisance and loss of consortium, and a verdict in favor of the Defendants on the Links' negligence claim. On February 19, 2013, the Links filed a motion for prejudgment interest. On that same day, the Links filed a motion for a new trial on the issue of damages only, or in the alternative additur. The trial court denied both motions. On February 21, 2013, the Defendants filed a motion for judgment notwithstanding the verdict ("JNOV"). The trial court denied the motion on July 26, 2013, and the Defendants appealed to this court.

{¶11} We dismissed the initial appeal for lack of a final appealable order. The trial court corrected this issue through the entry of a nunc pro tunc order filed on April 18, 2014. This order set forth the disposition of all of the Links' claims, entered the comparative fault findings, and awarded the Links their respective damages based upon such findings. This order is the subject of the instant appeal.

{¶12} The Defendants have collectively set forth five assignments of error. CEI sets forth four assignments of error for our review:

> I. The trial court erred in failing to grant summary judgment, a directed verdict, or a JNOV as to the Links' claims for qualified nuisance on the grounds that the Ohio Supreme Court's decision in *Turner v. Ohio Bell Telephone Co.*, 118 Ohio St.3d 215, 2008-Ohio-2010, 887 N.E.2d 1158, controls and establishes that CEI cannot be liable to the Links for Douglas Link's collision with the Pole located off

the improved portion of the road because (a) CEI possessed the necessary permission to install the Pole and (b) CEI's pole did not interfere with the usual and ordinary course of travel.

II. The trial court erred in failing to grant summary judgment, direct a verdict, or grant JNOV as to the Links' claim for qualified nuisance on the grounds that the Links failed to identify any public right with which the Pole interfered, which is a necessary element of the claim.

III. The trial court erred in failing to grant summary judgment, direct a verdict, or grant JNOV as to the Links' claim for qualified nuisance after the jury found that neither CEI nor FESC owed a duty of care to Douglas Link.

IV. The trial court erred in failing to grant summary judgment, direct a verdict, or grant JNOV as to Diane Link's derivative claim for loss of consortium on the grounds that there was no viable substantive claim against CEI or FESC.

FESC has set forth a single assignment of error for our review:

V. The trial court erred in failing to direct a verdict or to grant JNOV on the Links' claim of qualified nuisance against FESC when the evidence demonstrated that FESC neither owned nor controlled the Pole that was struck by Douglas Link's motorcycle.

The Links filed a cross-appeal and set forth four cross-assignments of error:

I. The trial court erred in failing to grant the Links a new trial for the limited purpose of past pain and suffering.

II. The trial court erred in granting the Defendants' motion for directed verdict related to the Links' claim for punitive damages, and not permitting an instruction on punitive damages to go to the jury.

III. The trial court erred in failing to grant the Links' motion for prejudgment interest.

IV. The trial court erred in failing to grant the Links a new trial on the issue of damages.

## Standards of Review

{¶13} We review de novo a trial court's order denying a motion for summary judgment.

*Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Under Civ.R.

56(C), summary judgment should be granted if (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, ¶ 6.

{¶14} We also apply a de novo standard review to a trial court's order denying a motion for a directed verdict or a motion for JNOV. *Zappola v. Rock Capital Sound Corp.*, 8th Dist. Cuyahoga No. 100055, 2014-Ohio-2261, ¶ 63. In considering either motion, the trial court should construe the evidence in the light most favorable to the non-moving party. *Id.* at ¶ 64, citing *Posin v. A.B.C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 275, 344 N.E.2d 334 (1976) The motion should be denied if there is substantial evidence to support the non-moving party's side of the case and if reasonable minds could reach different conclusions. *Id.* In deciding the motion, the trial court shall not weigh the evidence or the credibility of the witnesses. *Id.*

{¶15} We apply the abuse of discretion standard when reviewing a trial court's ruling on a motion for a new trial. *Id.* at ¶ 65. Under Civ.R. 59(A)(6), a trial court may order a new trial if it is apparent that the verdict is not sustained by the manifest weight of the evidence. In considering a motion for a new trial, the trial court is required to

> weigh the evidence and pass upon the credibility of the witnesses, not in the substantially unlimited sense that such weight and credibility are passed on originally by the jury but in the more restricted sense of whether it appears to the trial court that manifest injustice has been done and that the verdict is against the manifest weight of the evidence.

*Rybak v. Main Sail, LLC*, 8th Dist. Cuyahoga No. 96899, 2012-Ohio-2298, ¶ 52, quoting *Rohde v. Farmer*, 23 Ohio St.2d 82, 262 N.E.2d 685 (1970), paragraph three of the syllabus. With these standards in mind, we turn to the assignments of error raised by the parties.

<u>Analysis</u>

**{¶16}** In the Defendants' first assignment of error, CEI argues that the qualified nuisance claim must fail under the Ohio Supreme Court's decision in *Turner v. Ohio Bell Tel. Co.*, 118 Ohio St.3d 215, 2008-Ohio-2010, 887 N.E.2d 1158. We disagree. In *Turner*, the Court held that

> when a vehicle collides with a utility pole located off the improved portion of the roadway but within the right-of-way, a public utility is not liable, as a matter of law, if the utility has obtained any necessary permission to install the pole and the pole does not interfere with the usual and ordinary course of travel.

*Id.* at ¶ 21. The utility pole in *Turner* was erected pursuant to a permit issued by the Ohio Department of Transportation. *Id.* at ¶ 26. Therefore, the court concluded that the utility company had obtained the necessary permission to install the pole. The court also determined that the pole did not interfere with the usual and ordinary course of travel because it was "located in the right-of-way but off the improved portion of the road and because a motorist properly using the usual and ordinary course of travel would not come into contact with the utility pole." *Id.* at ¶ 26.

**{¶17}** Following *Turner*, in *Bidar v. Cleveland Elec. Illum. Co.*, 8th Dist. Cuyahoga No. 97490, 2012-Ohio-3686, we were confronted with facts that were, unfortunately, similar to the facts in the instant case. In *Bidar*, the plaintiff was also driving on Savage Road when a deer darted into the roadway. The plaintiff swerved to avoid hitting the deer and, instead, hit one of the other utility poles that the Defendants had refused to relocate. The trial court determined that under *Turner*, CEI was entitled to summary judgment. We reversed.

**{¶18}** We first explained that under *Turner*, "a jury determination of the reasonableness of pole placement is unnecessary if (1) permission was granted, and (2) the pole does not

interfere with the usual and ordinary course of travel." *Id.* at ¶ 16. We further determined that "[t]hese are two separate requirements, but 'placement that complies with the requirements of the public authority that owns the right of way is indicative that the object is not an obstacle to the traveling public.'" *Id.*, quoting *Turner* at ¶ 20.

{¶19} Applying *Turner* to the facts in *Bidar*, we determined, inter alia, that no permission had been granted by any public authority in the *Bidar* case. *Id.* at ¶ 17. We explained that under R.C. 5543.09(A) and 5571.05, the project to widen Savage Road was subject to the supervision of the county engineer.[1] *Id.* at ¶ 25. The plaintiffs in *Bidar* had set forth evidence demonstrating that the county engineer found the pole's placement unacceptable and, therefore, the county engineer had not granted permission for the pole's placement. *Id.* We concluded that the case was distinguishable from the facts in *Turner* and that the reasonableness of the pole placement remained a jury question.

{¶20} Applying *Bidar* to the instant case leads us to the same conclusion. In this case, the plaintiffs set forth the same documentary evidence that the *Bidar* plaintiffs set forth regarding the county engineer's concerns about the location of the utility poles on Savage Road. Originally, CEI had planned to relocate or remove all of its poles on Savage Road. But after removing some of the poles, CEI abandoned its original plan.

{¶21} On March 26, 2009, the Geauga County Engineer's Office sent the Defendants a letter concerning CEI's revised plans stating that the township had kept Savage Road closed since the project began to "protect not only the driving public, but also their and your tort liability." The letter went on to state that the revised plans did not "address the clear zone of the

---

[1]CEI argues that these statutes do not require that CEI gain the county engineer's approval for pole placement. We already rejected that argument in *Bidar*. *See Bidar* at ¶ 17, 25.

roadway. In some cases the poles are in the ditch line and may not have enough cover, in other areas, poles are in front of the ditch and only four to six feet off the edge of the pavement." According to the county engineer, the revised plans created a "liability the township will not allow to exist on a public road," as well as a "liability" the engineer thought appellants would not want to absorb. The letter concluded as follows:

> As Project Manager for the township road reconstruction project, I am requesting your review of this project with the hope you will agree that it is in the best interest of everyone that FESC completes the [original] plan in a timely fashion and provide a safe, clear zone for the roadway.

{¶22} The Defendants were not responsive to the concerns raised in the letter. Less than one year later, the *Bidar* accident occurred. The township wrote to the Defendants again, informing them of the *Bidar* accident and stating:

> It is apparent that safety dictates the relocation of these poles to an adequate distance from the roadway and in line with the other poles on Savage Road.
>
> We would like a resolution of this issue with CEI as soon as possible and before there are any further accidents. We look forward to your prompt notification of the schedule for relocating the poles.

The township did not receive a response for almost three months. The response stated that the Defendants had decided not to relocate the utility poles except at the township's sole cost and expense. Twenty-five days later, the Link accident occurred.

{¶23} CEI argues that the county and the township implicitly approved of the decision to leave the Pole in place by reopening Savage Road with the Pole in its original position. We disagree. The evidence set forth above establishes that the county engineer consistently communicated its disapproval to the Defendants regarding the Pole's placement. The Defendants refused to move the Pole notwithstanding this disapproval, and eventually the road was reopened. After the road was reopened and the *Bidar* accident occurred, the Defendants

were again notified that the poles that had not been relocated were in an unacceptable location. The message to the Defendants was consistent and clear: the Pole needed to be relocated. CEI's argument to the contrary fails.

**{¶24}** We conclude, as we did in *Bidar*, that CEI did not have the requisite permission to keep the Pole in its original location after completion of the Savage Road widening project. Accordingly, CEI cannot rely on *Turner* as a shield from liability. We overrule the first assignment of error.

**{¶25}** In the Defendants' second assignment of error, CEI argues that the trial court erred in failing to grant summary judgment, direct a verdict, or grant JNOV as to the Links' claim for qualified nuisance on the grounds that the Links failed to identify any public right with which the Pole interfered, which is a necessary element of the claim.

**{¶26}** CEI asserts that a qualified nuisance is a form of public nuisance and that a public nuisance does not exist unless there was an interference with a public right common to all members of the general public. According to CEI, the public does not have the right to drive off the roadway to a place where it might strike a stationary object off the road.

**{¶27}** We disagree with CEI's position. First, qualified nuisance is not a form of public nuisance. A qualified nuisance can also exist as a private nuisance. *See Hardin v. Naughton*, 8th Dist. Cuyahoga No. 98645, 2013-Ohio-1549, ¶ 19 ("A public or private nuisance may be further classified as either an 'absolute' nuisance, or nuisance per se, or a 'qualified' nuisance."). The linchpin in a qualified nuisance claim is whether "a lawful act [was] 'so negligently or carelessly done as to create a potential and unreasonable risk of harm, which in due course results in injury to another.'" *Id.* at ¶ 20.

{¶28} Second, if we were to credit CEI's position, then it would follow that no one could ever recover for a qualified nuisance when one drives off the roadway and hits a pole. But our case law makes clear that there are circumstances when one can recover for qualified nuisance for driving off a roadway and hitting a pole. In *Bidar* we reversed the trial court's grant of summary judgment on the driver's qualified nuisance claim, in part because "the Bidars presented evidence that created a genuine issue of material fact as to whether the pole placement interfered with the usual and ordinary course of travel." *Bidar*, 8th Dist. Cuyahoga No. 97490, 2012-Ohio-3686, at ¶ 25. In *Bidar*, as in the instant case, the pole that the driver hit was located off of the road. By reversing summary judgment in *Bidar*, we necessarily determined that there are instances where a plaintiff can recover for a qualified nuisance when he has driven off the road and hit a pole. Because CEI's argument boils down to the contention that one can never recover under such circumstances, the assignment of error fails. The second assignment of error is overruled.

{¶29} In the Defendants' third assignment of error, CEI argues that the trial court erred in failing to grant summary judgment, direct a verdict, or grant JNOV as to the Links' claim for qualified nuisance after the jury found that neither CEI nor FESC owed a duty of care to Douglas Link. For the reasons that follow, we overrule the assignment of error.

{¶30} "In essence, an action for qualified nuisance is an action for the negligent maintenance of a condition that creates an unreasonable risk of harm that results in injury." *Hardin*, 8th Dist. Cuyahoga No. 98645, 2013-Ohio-1549, at ¶ 20. A nuisance claim relies upon a finding of negligence, and so "the allegations of nuisance and negligence merge." *Id.*, citing *Allen Freight Lines, Inc. v. Consol. Rail Corp.*, 64 Ohio St.3d 274, 276, 595 N.E.2d 855 (1992). Therefore, to prevail on a claim for qualified nuisance, a plaintiff must demonstrate that

the defendants breached an applicable duty of care and that the breach proximately caused the plaintiff's injuries. *See id.* at ¶ 22.

**{¶31}** The jury found that CEI was liable for qualified nuisance. But in a special interrogatory for the negligence claim, the jury determined that CEI did not owe a duty of care to Douglas Link. Because the existence of an applicable duty is one of the elements of a qualified nuisance claim, the jury's verdicts on the two claims in this case are at odds with one another. The Links point out that the special interrogatory was specific to the negligence claim and that the general verdict was specific to the qualified nuisance claim. But because the allegations of negligence and the allegations of qualified nuisance merge, we conclude that the special interrogatory in the negligence claim is relevant to the general verdict in the qualified nuisance claim. *See id.* at ¶ 20.

**{¶32}** However, CEI waived any error in the inconsistency by failing to object before the jury was discharged. *See Avondet v. Blankstein*, 118 Ohio App.3d 357, 368, 692 N.E.2d 1063 (8th Dist.1997). The law is clear that where the inconsistencies between a general verdict and an interrogatory are apparent before the jury is discharged, the inconsistency is waived unless a party raises an objection prior to the jury's discharge. *Id.* at 368-369.

**{¶33}** Under Civ.R. 49(B), a trial court has three options if the jury's answers to the interrogatories are internally inconsistent or inconsistent with the verdict: (1) it may enter judgment consistent with the answers, notwithstanding the verdict; (2) it may return the matter to the jury for further consideration, or (3) it may order a new trial. *Proctor v. Hankinson*, 5th Dist. Licking No. 08 CA 0115, 2009-Ohio-4248, ¶ 43. The Ohio Supreme Court has determined that when an interrogatory response is inconsistent and irreconcilable with the

general verdict, "the clear, best choice [is] to send the jury back for further deliberations." *Shaffer v. Maier*, 68 Ohio St.3d 416, 421, 627 N.E.2d 986 (1994).

{¶34} If a party fails to bring the inconsistency to the court's attention while the jury is still empaneled, and later files a motion for a new trial, that party "has effectively curtailed the court's discretion by eliminating two of [the court's] options under Civ.R. 49, including the option the Supreme Court found to be the clear best choice." *Proctor* at ¶ 46.

{¶35} The waiver rule serves two important goals. First, it "promote[s] the efficiency of trials by permitting the reconciliation of inconsistencies without the need for a new presentation of evidence to a different trier of fact." *Avondet,* 118 Ohio App.3d at 368, quoting *Greynolds v. Kurman*, 91 Ohio App.3d 389, 395, 632 N.E.2d 946 (1993). The rule also "prevent[s] jury shopping by litigants who might wait to object to an inconsistency until after the original jury is discharged." *Id.*

{¶36} In the instant case, although the inconsistency between the general verdict and interrogatory were apparent prior to the jury's discharge, CEI did not object to the inconsistency until after the jury was discharged. Accordingly, CEI waived any error in the inconsistency.[2] Accordingly, we overrule the third assignment of error.

{¶37} In the Defendants' fifth assignment of error,[3] FESC asserts that the trial court erred in failing to direct a verdict or to grant JNOV on the Links' claim of qualified nuisance against

---

[2]Although CEI does not argue plain error, we note that the inconsistency in this case does not amount to plain error. In *Avondet*, we concluded that the interrogatory was clearly inconsistent with the general verdict, but concluded that the appellant had waived the inconsistency. Implicit in this holding is the rule that such inconsistencies do not constitute plain error. It, likewise, follows that any such inconsistency in the instant case does not rise to the level of plain error.

[3]We address the assignments of error out of order for ease of discussion.

FESC when the evidence demonstrated that FESC neither owned nor controlled the Pole that was struck by Douglas Link's motorcycle. We disagree and so we overrule the assignment of error.

{¶38} FESC argues that in order for it to be held liable for qualified nuisance, the Links were required to demonstrate that FESC had possession or control over the thing that allegedly caused the nuisance: in this case, the Pole. The Links take issue with the legal standard articulated by FESC, but they argue that, even if the legal standard articulated by FESC is correct, the record demonstrates that FESC did possess or control the Pole.

{¶39} We agree with the Links. FESC is relying on the defense of "landlord out of possession and control," a common law defense applying in the landlord-tenant context. *See Ogle v. Kelly*, 90 Ohio App.3d 392, 396, 629 N.E.2d 495 (1st Dist.1993). Under this rule, "if the landlord does not retain the right to admit or exclude persons from the leased premises, neither does the landlord reserve the possession or control necessary for imposition of liability because of the condition of the premises." *Id.* at 396, citing *Hendrix v. Eighth & Walnut Corp.*, 1 Ohio St.3d 205, 438 N.E.2d 1149 (1982). We fail to see how this rule applies to the facts of the instant case. FESC and CEI are not landlord and tenant. Rather, FESC is a shared service company that supports electric distribution operating companies like CEI.[4]

{¶40} In order to demonstrate that FESC was liable for qualified nuisance, the Links were required to demonstrate that FESC breached an applicable duty of care and that the breach proximately caused Douglas Link's injuries. *See Hardin*, 8th Dist. Cuyahoga No. 98645, 2013-Ohio-1549, at ¶ 22. FESC argues for the first time in its reply brief that it did not owe a

---

[4]Furthermore, assuming arguendo that the Links were required to demonstrate that FESC possessed or controlled the Pole, the record provides ample evidence from which a reasonable jury could reach that conclusion.

duty to the Links. We will not consider this argument. "Reply briefs are to be used only to rebut arguments raised in an appellee's brief, and an appellant may not use a reply brief to raise new issues or assignments of error." *Capital One Bank (USA), N.A. v. Gordon*, 8th Dist. Cuyahoga No. 98953, 2013-Ohio-2095, ¶ 9. *See also* App.R. 16(C). For the aforementioned reasons, we overrule the fifth assignment of error.

{¶41} In the Defendants' fourth assignment of error, CEI argues that the trial court erred in failing to grant summary judgment, direct a verdict, or grant JNOV as to Diane Link's derivative claim for loss of consortium on the grounds that there was no viable substantive claim against CEI or FESC.

{¶42} The jury found that Diane Link was entitled to damages based on her loss of consortium claim. A loss of consortium claim is a derivative cause of action dependent on the viability of the primary cause of action. *See Tourlakis v. Beverage Distrib.*, 8th Dist. Cuyahoga No. 81222, 2002-Ohio-7252, ¶ 29. In this case, the primary cause of action is Douglas Link's qualified nuisance claim. Diane Link's loss of consortium claim is derivative of the qualified nuisance claim. CEI's argument in its fourth assignment of error is based on the assumption that we would sustain either its first, second, or third assignments of error, because those assignments of error challenge the viability of the qualified nuisance claim. CEI asserts that if the qualified nuisance claim fails, then the loss of consortium claim must also fail. Similarly, in its fifth assignment of error based on the qualified nuisance claim, FESC asserts that if we sustain the assignment of error, then FESC cannot be liable to Diane Link for loss of consortium.

{¶43} Because we have overruled the first, second, third, and fifth assignments of error, Douglas Link's primary cause of action for qualified nuisance survives as to both CEI and FESC.

Accordingly, Diane Link's loss of consortium claim also survives. We, therefore, overrule the fourth assignment of error.

{¶44} In their first cross-assignment of error, the Links argue that the trial court erred in failing to grant the Links a new trial for the limited purpose of past pain and suffering. We overrule the assignment of error.

{¶45} In one of the interrogatories, the jury found that Douglas Link should be compensated in the following manner: $237,200 for past economic loss, $180,982 for future economic loss, $0 for past non-economic loss, and $234,100 for future non-economic loss. The Links point out that they requested approximately $100,000 in past economic damages related to past income loss, and $620,718.84 for past medical expenses. The argument follows that a portion of the jury's award for past economic harm must have included Douglas Link's past medical expenses. According to the Links, because the jury awarded Douglas Link damages for medical expenses, they were required under the law to award him damages for past non-economic harm as well. We will not resolve this issue, because the Links have waived the argument.

{¶46} In essence, the Links are arguing that the jury's verdict was inconsistent. But the Links failed to object to the jury's damages award until after the jury had been dismissed. This brings us back to our analysis in CEI's third assignment of error. *See supra* at ¶ 16-24. What is good for the goose is good for the gander. The Links had an opportunity to raise any readily apparent inconsistency in the jury's verdict while the jury was still empaneled. The Links made no such objection and so waived any alleged inconsistency. *See Avondet*, 118 Ohio App.3d at 357, 692 N.E.2d 1063. Accordingly, we overrule the first cross-assignment of error.

**{¶47}** In their second cross-assignment of error, the Links argue that the trial court erred in granting the Defendants' motion for a directed verdict related to the Links' claim for punitive damages and for not permitting an instruction on punitive damages to go to the jury. We agree that the trial court erred in granting the motion for a directed verdict on punitive damages and so we sustain the assignment of error.

**{¶48}** Punitive damages can be awarded in a civil tort action only where the defendant acted with "actual malice." *Wilburn v. Cleveland Elec. Illum. Co.*, 74 Ohio App.3d 401, 411, 599 N.E.2d 301 (8th Dist.1991), citing *Preston v. Murty*, 32 Ohio St.3d 334, 512 N.E.2d 1174 (1987). The Ohio Supreme Court has explained:

> Actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.

*Preston* at syllabus. "[T]he latter category of actual malice includes 'extremely reckless behavior revealing a conscious disregard for a great and obvious harm.'" *Cabe v. Lunich*, 70 Ohio St.3d 598, 601, 640 N.E.2d 159 (1994), quoting *Preston* at 335. The purpose behind awarding punitive damages is both to punish the offending party and to deter others from similar behavior. *Id.* at 601-602.

**{¶49}** Before submitting the issue of punitive damages to a jury, the trial court is required to

> review the evidence to determine if reasonable minds can differ as to whether the party was aware his or her act had a great probability of causing substantial harm. Furthermore, the court must determine that sufficient evidence is presented revealing that the party consciously disregarded the injured party's rights or safety.

*Id.* at 336.

**{¶50}** In the instant case, the trial court granted the Defendants' motion for a directed verdict on punitive damages because it determined that the evidence did not support a finding that there was a great probability that the Defendants' actions would harm Douglas Link. The trial court based its conclusion on the fact that there were 2,200 vehicles driving on Savage Road each day, but there had been only one prior accident on the road. According to the trial court, while there may have been a possibility of substantial harm there was not a great probability of substantial harm.

**{¶51}** The Links argue that the trial court erred because there was substantial evidence in the record to support a finding that CEI and FESC consciously disregarded Douglas Link's safety. We agree. CEI and FESC had knowledge of a prior, similar collision that had recently taken place at the same set of utility poles.

**{¶52}** The evidence presented at trial revealed that Savage Road was widened and reopened in 2009, and that CEI and FESC were notified by the county engineer that the location of the poles posed a safety risk. The *Bidar* accident occurred on May 23, 2010. CEI and FESC were notified about the *Bidar* accident and chose not to relocate the poles.[5] Douglas Link's accident occurred less than five months later on October 8, 2010. There was sufficient evidence presented from which a jury could conclude that there was a great probability of harm. Evidence was also presented that the speed limit on Savage Road was 45 miles per hour. Therefore, sufficient evidence was presented from which a jury could conclude that the harm caused could be substantial.

---

[5]At oral argument, the Links' attorney cited to testimony from two CEI employees who testified that moving the eight poles would have cost a total approximately $20,000.

**{¶53}** We conclude that reasonable minds could differ as to whether CEI and FESC were aware that their acts had a great probability of causing substantial harm. Accordingly, the trial court erred in granting CEI and FESC's motion for a directed verdict on the issue of punitive damages.

**{¶54}** On remand, the trial court is directed to conduct a new trial on the issue of punitive damages with CEI and FESC as the only defendants. The parties argue as to whether, in a trial on the issue of punitive damages, the trial court should permit the introduction of evidence concerning the *Bidar* accident. We conclude that the evidence concerning the *Bidar* accident is admissible for purposes of such new trial on punitive damages.

**{¶55}** Although the trial court originally granted the Defendants' motion in limine to exclude evidence of the *Bidar* accident, this motion practice was relevant to a trial on the issue of liability. The trial court could have logically determined under Evid.R. 403(A) that the probative value of that evidence was substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. But such concerns are not present in a trial on the issue of punitive damages. Evidence showing that CEI and FESC were aware of the *Bidar* accident is probative of whether CEI and FESC consciously disregarded Douglas Link's safety. Further, there is no danger of unfair prejudice, confusion of the issues, or misleading the jury. Accordingly, the jury should be permitted to hear evidence relevant to the *Bidar* accident. The Links' second cross-assignment of error is sustained.

**{¶56}** In their third cross-assignment of error, the Links argue that the trial court erred in failing to grant the Links' motion for prejudgment interest. We overrule the assignment of error.

**{¶57}** A ruling on a motion for prejudgment interest is reviewed for an abuse of discretion. *See Damario v. Shimmel*, 8th Dist. Cuyahoga Nos. 90760 and 90875, 2008-Ohio-5582, ¶ 55, citing *Scioto Mem. Hosp. Assn. v. Price Waterhouse*, 74 Ohio St.3d 474, 479, 659 N.E.2d 1268 (1996).

**{¶58}** R.C. 1343.03 provides that prejudgment interest may be awarded in the following instance:

> If, upon motion of any party to a civil action that is based on tortious conduct, that has not been settled by agreement of the parties, and in which the court has rendered a judgment, decree, or order for the payment of money, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case[.]

**{¶59}** The rule "encourage[s] prompt settlement and * * * discourage[s] defendants from frivolously opposing and prolonging suits for legitimate claims between injury and judgment." *Damario* at ¶ 52, citing *Royal Elec. Constr. Corp. v. Ohio State Univ.*, 73 Ohio St.3d 110, 116, 652 N.E.2d 687 (1995).

**{¶60}** The party seeking prejudgment interest bears the burden of proof. *Id.* at ¶ 54. In determining whether to award a motion for prejudgment interest, the trial court must consider whether the nonmoving party: "(1) fully cooperated in discovery proceedings, (2) rationally evaluated its risks and potential liability, (3) did not unnecessarily delay the proceedings, and (4) made a good faith settlement offer or responded in good faith to an offer from the other party." *Id.*, citing *Kalain v. Smith*, 25 Ohio St.3d 157, 159, 495 N.E.2d 572 (1986). "If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer." *Kalain* at 159.

**{¶61}** The Links assert that the Defendants' offer to settle the case for $20,000 was not made in good faith, and that the Defendants unnecessarily delayed the proceedings by filing numerous summary judgment motions and motions for reconsideration based on a questionable application of *Turner*, 118 Ohio St.3d 215, 2008-Ohio-2010, 887 N.E.2d 1158. The Defendants argue that they had a good faith, objectively reasonable belief that *Turner* applied in this case and so they were not required to make any monetary settlement offer. If *Turner* was applicable, it would act as a complete bar to recovery.

**{¶62}** Although we ultimately determined that *Turner* does not apply in the instant case, the Defendants' argument to the contrary was not frivolous. Accordingly, the Defendants were not required to make any monetary settlement offer. It follows that the Defendants' motions for summary judgment and for reconsideration based on *Turner* did not constitute unnecessary an delay. The trial court did not abuse its discretion in denying the Links' motion for prejudgment interest, and so we overrule the third cross-assignment of error.

**{¶63}** In their fourth cross-assignment of error, the Links argue that the trial court erred in failing to grant the Links' a new trial on the issue of damages. We conclude that the trial court did not abuse its discretion in denying the motion for a new trial and so we overrule the assignment of error.

**{¶64}** We have previously explained:

> The assessment of damages lies "so thoroughly within the province of the [trier of fact] that a reviewing court is not at liberty to disturb the [trier of fact's] assessment" absent an affirmative finding of passion and prejudice or a finding that the award is manifestly excessive or inadequate. *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 655, 635 N.E.2d 331 (1994). A reviewing court should not find that a verdict is inadequate unless "the inadequacy of the verdict is so gross as to shock the sense of justice and fairness, or the amount of the verdict cannot be reconciled with the undisputed evidence in the case, or it is apparent that the jury failed to include all the items of damages comprising a plaintiff's

claim." *Pearson v. Wasell*, 131 Ohio App.3d 700, 709-710, 723 N.E.2d 609 (1998), citing *Iames v. Murphy*, 106 Ohio App.3d 627, 666 N.E.2d 1147 (1995).

*Decapua v. Rychlik*, 8th Dist. Cuyahoga No. 91189, 2009-Ohio-2029, ¶ 22. With respect to damages, "the mere fact that testimony is uncontradicted, unimpeached, and unchallenged does not require the trier of fact to accept the evidence if the trier of fact found that the testimony was not credible." *Id.* at ¶ 25.

**{¶65}** The Links first argue that the jury arrived at a quotient verdict. A quotient verdict is not legally objectionable unless the jurors entered into a prior agreement to be bound by such a figure. *Michelson v. Kravitz*, 103 Ohio App.3d 301, 305, 659 N.E.2d 359 (8th Dist.1995), citing *Lund v. Kline*, 133 Ohio St. 317, 13 N.E.2d 575 (1938). The Links do not allege that the jurors in this case entered into a prior agreement. Furthermore, the Links fail to identify specific evidence in support of their allegation that the verdict in this case constitutes a quotient verdict. Accordingly, this argument is without merit.

**{¶66}** The Links also argue that they are entitled to a new trial on damages because the damages award was against the manifest weight of the evidence. In the instant case, the jury awarded the Links $798,532. The Links argued at trial that they were entitled to past medical expenses in the amount of $620,718.84; $186,998 in future medical expenses; $100,000 in lost past income; $1,051,700 in future lost income; and $318,000 in loss of household services.

**{¶67}** Our review of the record does not lead us to conclude that the trial court abused its discretion. The verdict in this case does not shock the sense of justice and fairness. Further, the jury was free to disbelieve and discredit the calculations the Links' economist testified to

with respect to future income loss and the value of loss of household services. For these reasons, we overrule the Links' fourth cross-assignment of error.

It is ordered that appellees/cross-appellants recover from appellants/cross-appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to

Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
MELODY J. STEWART, J., CONCUR